Will Lewis v. The State.

No. 277.  Decided February 16, 1910.

Rehearing denied April 13, 1910.

**1.—Murder—Continuance—Want of Diligence.**

Where, upon trial for murder, the application for a continuance did not disclose diligence, and showed that the absent witnesses could not probably be located, there was no error in overruling the application.

**2.—Same—Allusion to Former Trial.**

Where, upon trial for murder, the county attorney asked the defendant whether he had been refused bail on habeas corpus, but the court sustained an objection thereto and no answer was given, there was no reversible error, although the question was highly improper.  Distinguishing Wyatt v. State, 58 Texas Crim. Rep., 115.

**3.—Same—Charge of Court—Threats.**

Where, upon trial for murder, the court charged the jury on the question of communicated threats, that the same justified the homicide whether they were made in fact or not if the acts done, words spoken and conduct of deceased either, any or all of them, created in the mind of the defendant an apprehension that the deceased was in the act of executing the threats so made, or was about to execute the same, the same was sufficient.  Distinguishing Mitchell v. State, 50 Texas Crim. Rep., 180; Watson v. State, 50 Texas Crim. Rep., 171.

**4.—Same—Sufficiency of the Evidence.**

Where, upon trial for murder, the conviction was sustained by the evidence, there was no error.

Appeal from the Criminal District Court of Dallas.  Tried below before the Hon. Robert B. Seay.

Appeal from a conviction of murder in the second degree; penalty, fifty-five years imprisonment in the penitentiary.

The opinion states the case.

*Baskett & Evans,* for appellant.—On question of communicated threats:  Cases cited in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was charged by indictment returned into the Criminal District Court of Dallas County on the 17th day of October, 1908, with the murder of one Bob Nichols.  On the 17th day of May thereafter he was on trial found guilty of murder in the second degree, and his punishment assessed at confinement in the State penitentiary for fifty-five years.

1.  When the case was called appellant filed an application for continuance on account of the absence of Anderson Dial, George Washington, Charles Dunbar and Richard Tucker.  Dial is alleged in the application to reside in Grayson County, Washington in Fort Worth, Dunbar near Orphan's Home, in Dallas County, and Richard Tucker at 742 Elm Street, in the city of Dallas.  In his application appellant

avers that about three weeks prior thereto he had information as to the location of Washington, who was then residing in Fort Worth, Tarrant County; that about two weeks before this he was advised and heard that the witness Dial was living in Sherman, Grayson County; that Dunbar lived, when he last heard of him, near the Orphan's Home, in Dallas County, and that Tucker, as he was advised by his counsel, boarded at the address above stated, and that neither himself nor his present counsel knew the whereabouts of said witness until the 13th day of May, 1909. It is also averred in the application that he had been in jail since the October preceding, and, therefore, had been unable to look after said witnesses personally, but had to rely upon his kinspeople and counsel. That the law firm originally retained had, about the 4th or 5th of May, discovered that they would not be able to represent him in the cause, and that thereafter on the 8th of the same month he engaged his present counsel to represent him. That as soon as they ascertained the names of said witnesses and their addresses (the other counsel not having issued any process for said witnesses), to wit: on May 13, 1909, they caused subpoenas to be issued for the witnesses above named, all of which were returned not served. It may be stated that the facts expected to be proved by the several witnesses are material, and in the main relate to threats made by deceased towards appellant. This application was overruled by the court with the following explanation: "Attention is called to what the court considered a want of diligence, and the improbability of locating the witnesses. I think the defendant got the full benefit of the testimony desired, which was nearly altogether in regard to threats, because these alleged threats were communicated to the defendant as well as others, and the court allowed proof as to what defendant said about his fear of deceased, when said threats were communicated." We think the diligence used was so clearly insufficient as to well justify the action of the trial court. As we have often said, the granting of continuances is, in a large measure, a matter of discretion with the trial court. In this case more than six months had intervened from the time appellant was indicted until any process was issued for any of the witnesses named. No sufficient reason is given why process was not earlier sued out. We must also attach, in view of the record, some importance, and give some credit to the suggestion of the trial court as to the improbability of appellant locating the witnesses at all. In view of the record as it reaches us, we do not believe that we would be justified in reversing the case on account of the action of the court in overruling this application.

2.   Complaint is made of the misconduct of the county attorney in propounding to appellant the following question: "Well, on your habeas corpus trial in this case before the court you were remanded to jail without bail, refused bail, weren't you?" This was objected to as being a reference to the result of the case on the habeas corpus trial, and as an attempt to get before the jury the opinion of the court

as to the grade of the offense, and was calculated to prejudice the minds of the jury against the defendant. The record shows that the objections made were sustained by the court, and no answer was given. We think this question of the county attorney was highly improper, but in view of the fact that it was not answered, and there was no remark made touching the matter, and it is distinguishable from the recent case of Wyatt v. State, and was not a matter of such gravity as would demand or require a reversal of the case. We can not forbear, in this connection, however, to reprobate the practice of prosecuting officers in asking questions such as these, and trust that we will not again soon be called on to renew this caution.

3. Complaint is made of the charge of the court in respect to communicated threats. This charge is as follows:

"When a defendant accused of murder seeks to justify himself on the ground of threats against his own life, or threats to do him serious bodily injury, he is permitted to introduce evidence of the threat or threats so made, but the same are not to be regarded as affording a justification, unless it be shown that at the time of the homicide by some act then done an intention was manifested to execute the threat or threats so made. And in this case if you believe from the evidence that prior to the homicide it was communicated to the defendant that threats had been made by the deceased to kill or inflict serious bodily injury upon the defendant, and the defendant believed that such communication as to threats made to him were true, and at the time of the homicide the deceased by any act then done, or by words coupled with such acts, if any, reasonably created in the mind of the defendant an apprehension that the said deceased was in the act of executing the threats so made, or was about to execute the same, or the deceased by his conduct, coupled with words, if any, indicated that he was then and there about to unlawfully attack the defendant and inflict upon him death or serious bodily injury, and that the defendant so believing shot and killed the deceased, then the same would be justifiable homicide. If, however, you should believe from the evidence, beyond a reasonable doubt, that the defendant with a shotgun fired upon and killed Bob Nichols, not for the purpose of protecting his person from unlawful violence from the said Bob Nichols, and not because of reasonable apprehension at the time that the said Bob Nichols was using or about to use unlawful violence upon him, the defendant, then he can not justify the killing of said Nichols, if he did kill him, as done in his lawful self-defense."

It is urged in brief of counsel for appellant that this charge was in effect criticised and condemned in the cases of Mitchell v. State, 50 Texas Crim. Rep., 180, and Watson v. State, 50 Texas Crim. Rep., 171. We think the charges are clearly distinguishable, and that the vice appearing in the charges in the cases above cited does not appear in the charge here considered. In the case of Mitchell v. State, supra, Judge Davidson, speaking for the court, says: "If appellant is en-

titled to a charge on the subject of threats at all, he is entitled to an affirmative one, and in fairness, under our law, the jury should be told, if they believe deceased had threatened to take the life of accused, or had threatened to do him some serious bodily injury; and they further believed that at the time of the homicide he did some act which caused defendant to reasonably believe or apprehend that his life was in danger or his person was in danger of serious bodily injury, under such circumstances he had the right to shoot and kill and would therefore be guilty of no offense." The charge complained of in this case does that. It in terms instructs the jury that "if you believe from the evidence that prior to the homicide it was communicated to the defendant (whether in fact made or not) that threats had been made by the deceased to kill or inflict serious bodily injury upon the defendant, and the defendant believed that such communication as to threats made to him were true, and at the time of the homicide the deceased by *any* act then done, or by words coupled with such acts, if any, reasonably created in the mind of the defendant an apprehension that the said deceased was in the act of executing the threats so made, or was about to execute the same, or the deceased by his conduct, coupled with words, if any, indicated that he was then and there about to unlawfully attack the defendant and inflict upon him death or serious bodily injury, and that the defendant so believing shot and killed the deceased, then the same would be justifiable homicide." We think the issue is clearly presented to the jury not only in respect to threats actually made, but justified the homicide in respect to threats communicated, whether in fact made or not, and this with reference to the acts done, words spoken and conduct of deceased, either, any or all of them.

4. We have examined the charge of the court in the other respects complained of, and find no error in same. The testimony in the case was conflicting. It was the contention of the State, supported by strong evidence, that appellant deliberately hunted deceased up, chased him from Elm to Main Street, and shot him in the back while he was endeavoring to escape. It was the contention of appellant, supported by considerable testimony, that deceased pursued him for something like a block with a knife, when he got a gun, and while on his way home accidentally met deceased, who was making preparations to attack him, when he drew the weapon from under his apron and that just as he pulled the trigger deceased turned and was shot in the back. The jury have resolved the issues of fact against appellant. There is ample evidence in the record to sustain their finding. As presented, there is no error for which we would be authorized to reverse the judgment of conviction, and it is therefore affirmed.

*Affirmed.*

[Rehearing denied April 13, 1910.—Reporter.]