EARNEST YOUNG v. THE STATE.

No. 13976. Delivered February 11, 1931.
State's Rehearing Granted January 20, 1932.
Appellant's Rehearing Denied March 9, 1932.

490

The opinion states the case.

*R. L. Neal* and *J. F. Hair,* both of San Antonio, for appellant.

*K. K. Woodley,* District Attorney, of Sabinal, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, Presiding Judge.—The offense is murder; penalty assessed at confinement in the penitentiary for a period of fifty years.

The evidence is such as to show that Johnnie W. Bradshaw was murdered, and that Homer Edwards and the appellant were present at the time the offense was committed. Appellant claims that Edwards committed the offense and that he (appellant) was merely present and took no part in it. The homicide occurred on April 9, 1930. The appellant had twice been adjudged a lunatic, first in February, 1929, and again in January, 1930. Judgments, regular on their face, showing that the appellant was insane were introduced in evidence. Some ten days before the homicide, the appellant and Edwards, who was likewise an inmate of the insane asylum, had escaped therefrom.

The court instructed the jury on the defense of insanity. Paragraph 10 of the charge read as follows: "The judgments of the County Court in Bexar County, Texas, which have been introduced in evidence before you, adjudging that the defendant was insane on the 26th day of February, 1929, and also on the 8th day of January, 1930, established the fact that he was insane on the 8th day of January, 1930, and raise the presumption that he was insane at the time Johnnie W. Bradshaw was killed, but whether he was sane or insane at the very time of such killing is a question which it is your exclusive province to determine from all the facts and circumstances in evidence before you."

Under the facts the jury should have been instructed in substance that by reason of the judgments of insanity, the presumption existed that the appellant was insane at the time the offense was alleged to have been

committed, and that the burden was upon the state to prove from the evidence, beyond a reasonable doubt, that at the time the deceased was killed the appellant was sane, and unless the state did so prove the jury could not convict the accused of murder. In article 34, P. C., 1925, it is said: "No act done in a state of insanity can be punished as an offense."

That such is the law of this state has been declared many times. See Witty v. State, 69 Texas Crim. Rep., 125, 153 S. W., 1146; Yantis v. State, 95 Texas Crim. Rep., 541, 255 S. W., 180; Davidson v. State, 109 Texas Crim. Rep., 255, 4 S. W. (2d) 74, and precedents there cited.

In the succeeding paragraph of its charge the court instructed the jury on insanity, using the following language: "Ordinarily every person is presumed to be sane until the contrary is shown by proof, but in this case the defendant is presumed to have been insane at the time of the killing, and, therefore, not responsible for any act that he may have committed, until the contrary is shown by evidence beyond a reasonable doubt. So, even though you should find and be satisfied from the evidence under the charges hereinbefore given you that the defendant committed the act charged in the indictment, either alone or as a principal with one, Homer Edwards, still you cannot convict the defendant unless you further find and believe from the evidence beyond a reasonable doubt that the defendant was sane at the time of the killing."

The part of the charge last quoted above manifests the intention of the learned trial judge to give a fair charge on the law of insanity. It is believed, however, that when paragraphs 10 and 11 are considered together, they are calculated to leave the jury in doubt as to the burden of proof. The appellant had been adjudged insane and placed in a lunatic asylum. He had not been discharged. The judgments of insanity had not been set aside. He had recently escaped from the lunatic asylum. The evidence against him is wholly circumstantial, and the facts are such as to require for his protection that the jury be given a charge in which there could be no mistake that they would understand that the burden of proving that the appellant was sane at the time the criminal act is charged to have taken place is upon the state, and unless the burden was discharged, there could be no conviction.

The sufficiency of the evidence to support the verdict is very earnestly challenged by the appellant's counsel. A reversal of the case upon other grounds renders it improper for us to express any opinion with reference to the sufficiency of the evidence.

For the reasons stated above, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

492

HAWKINS, JUDGE.—Consideration of the state's motion for rehearing leads us to believe we were in error in reversing the judgment because of an omission from the charge of a specific instruction "that the burden was upon the state to prove beyond a reasonable doubt that appellant was sane at the time of the killing." Such instruction would have been appropriate under the facts of the case, but if the charge given upon the subject was to the same effect the omission would seem harmless. We believe the charge given placed the burden upon the state to prove that appellant was sane at the time of the killing, and that the omission of the particular instruction could not have affected his rights. The case of Hunt v. State, 33 Texas Crim. Rep., 252, 26 S. W., 206, 207, and the case of Yantis v. State, 95 Texas Crim. Rep., 541, 255 S. W., 180, are thought to support this conclusion.

The charge given in Hunt's case is set out in full in the opinion. It was characterized by this court as "an admirable charge." It appears from the opinion that it was objected to solely on the grounds of "reasonable doubt, presumption, and the burden of proof." We have been unable to distinguish the charge there under consideration from the one given in the present case. After setting out the charge given and a refused special charge, the opinion in Hunt's case proceeds in this language: "The charge of the court upon the subject of insanity very clearly presents four propositions * * * 4th, the judgment of the court establishing insanity having been put in evidence, the burden is upon the State to prove, beyond a reasonable doubt, that the insanity of which defendant was convicted was temporary, or prove that he had been cured of such insanity; otherwise, insanity is presumed to have continued."

Without discussing the charge given in Hunt's case (supra) it has been cited with approval in the following cases: Wisdom v. State, 42 Texas Crim. Rep., 579, 61 S. W., 926; Wooten v. State, 51 Texas Crim. Rep., 428, 102 S. W., 416; Jordan v. State, 64 Texas Crim. Rep., 187, 141 S. W., 786; Morse v. State, 68 Texas Crim. Rep., 351, 152 S. W., 927; Witty v. State, 69 Texas Crim. Rep., 125, 153 S. W., 1146; and Witty v. State, 75 Texas Crim. Rep., 440, 171 S. W., 229; Roberts v. State, 89 Texas Crim. Rep., 454, 231 S. W., 759.

In submitting the present case from the state's standpoint the jury were required to believe from the evidence beyond a reasonable doubt not only that appellant was a principal in the killing of Bradshaw, but also to find from the evidence beyond a reasonable doubt that appellant was "sane at the time of such killing." We quote the entire charge regarding the judgments of lunacy in the county court of Bexar county, and the results of those judgments as they affected the question of insanity, italicizing those parts of the charge relating to the burden of proof:

"(10) The judgments of the County Court of Bexar County, Texas,

which have been introduced in evidence before you, adjudging that the defendant was insane on the 26th day of February, 1929, and also on the 8th day of January, 1930, established the fact that he was insane on the 8th day of January, 1930, *and raise the presumption that he was insane at the time Johnnie W. Bradshaw was killed,* but whether he was sane or instane at the very time of such killing is a question which it is your exclusive province to determine from all the facts and circumstances in evidence before you.

"(11) No act committed in a state of insanity can be punished as an offense. Ordinarily, every person is presumed to be sane until the contrary is shown by proof, but in this case the defendant is presumed to have been insane at the time of the killing, and, therefore, not responsible for any act that he may have committed, *until the contrary is shown by evidence beyond a reasonable doubt.* So, even though you should find and be satisfied from the evidence under the charges hereinbefore given you that the defendant committed the act charged in the indictment, either alone or as a principal with one Homer Edwards, *still you cannot convict the defendant unless you further find and believe from the evidence beyond a reasonable doubt that the defendant was sane at the time of the killing.* A safe and reasonable test in all cases where insanity is a part of the defense would be: Did the defendant at the time of the killing (if you find he was guilty as a principal) have sufficient capacity and reason to enable him to distinguish between right and wrong as to the particular act he was then doing? Did he have knowledge that the act was wrong and criminal and punishable as a crime, and mind sufficient to apply it to his own case? *Unless the testimony satisfies you beyond a reasonable doubt that the defendant at the time Johnnie W. Bradshaw was killed had sufficient mental capacity and reason to enable him to distinguish between the right and wrong as to the particular act he was then doing* (if any) and had knowledge and understanding that the act (if any) was wrong and criminal, and to realize the nature and quality of it and to comprehend that such act (if any) was punishable as a crime, and that he knew the consequences thereof, you cannot convict the defendant even though you should believe from the evidence beyond a reasonable doubt that he killed Johnnie W. Bradshaw or participated in such killing as a principal, *and if you have a reasonable doubt as to whether or not the defendant was sane or insane at the time of the killing of Johnnie W. Bradshaw you must acquit him and say by your verdict not guilty."*

The last few lines of the charge in question are incorrect as applying reasonable doubt upon the issue of *"whether or not* the defendant was *sane or insane,"* etc., but no point is made with reference to that part of the charge, and considered in connection with the entire charge upon the subject it could not have misled the jury.

It was stated in the original opinion that the sufficiency of the evi-

dence had been challenged, but it being thought at that time that the judgment should be reversed upon the charge, the evidence was not discussed. After reaching a different conclusion regarding the charge, we think it proper now to make a condensed statement of the testimony.

Appellant and the deceased, Bradshaw, were brothers-in-law, having married sisters. Appellant and Homer Edwards had been confined in the insane asylum at San Antonio. They had escaped about a month before the killing of Bradshaw. In order to avoid recapture and return to the asylum appellant and Edwards had gone to John Insall's place, situated on the Guadalupe River some sixteen or seventeen miles from Boerne. Appellant was an old friend of Insall's, and had frequently been on the place. Appellant and Edwards remained there for some two weeks, after which they returned to San Antonio. They stayed there several days, during which time they were "hiding out," being apprehensive that they would be recaptured. On the night of the 9th of April, 1930, they returned to Insall's place, leaving San Antonio about eight o'clock. It appears that Bradshaw had taken them to Insall's on the occasion of their first trip there. On this last trip Mr. and Mrs. Bradshaw accompanied them in order that Mrs. Young would not have to return by herself, it evidently being contemplated that appellant and Edwards would remain there. When appellant, his wife and Edwards went to Bradshaw's house in San Antonio to get them as they were starting on the trip, it appears that for some reason Bradshaw was doubtful about letting Young enter the house, and some little disturbance occurred about it, but apparently it was not of a serious nature. Bradshaw had a 38-caliber pistol. Without invitation, Edwards entered the house with a shotgun and sat with the gun across his knees until Bradshaw and his wife were ready to start. On the way to Insall's something was said about appellant and Edwards killing a hog that had been running on Insall's place. Shortly after they arrived there deceased asked Mr. Insall if he would let him have a pair of overalls as he did not want to get his good clothes dirty, and Insall let him have the overalls, it being thought by Insall that deceased was going to work on a car which was out in front of the house. Appellant's version of the matter was that he and Edwards were going out to look for and kill the hog in question and that deceased insisted on going with them. At any rate, all of them left the house; some of the witnesses say they worked on the car, and others denied this fact. But all three of them disappeared. After a time appellant and Edwards returned without deceased. Mrs. Bradshaw immediately became very much concerned about her husband and commenced asking questions about him. From Mrs. Bradshaw's testimony we gather that the following occurred: Appellant and Edwards were together. In reply to Mrs. Bradshaw's inquiry about her husband, Edwards said he was down at the haystack skinning a hog. At this point Mrs. Young came out to where they were and asked

her husband where Bradshaw was, to which appellant replied, "I told you he was down there at the haystack." Mrs. Bradshaw spoke up and said, "He wouldn't turn you in to the law," to which appellant replied, "Yes, he would." Later on, Mrs. Bradshaw told them that she would go down there and look for her husband, whereupon appellant told her, "that they had had an argument, that they had had a fight or something, and that they had given him a good whipping and had told him never to show his face in town again." Asked further in regard to the trouble they had had with Bradshaw, Mrs. Bradshaw says appellant said Edwards and Bradshaw had a fight and Edwards told Bradshaw never to show up again. After this conversation, and after repairing a flat tire on the car, all of them returned to San Antonio, reaching there about three o'clock in the morning. Mrs. Bradshaw was put out at her house. Appellant and Edwards went on to appellant's house. Mrs. Bradshaw immediately reported the matter to the officers over the telephone.

It appears from the evidence that Edwards had a 25 automatic pistol. There were also in the car on this last trip to Insall's a sawed-off shotgun, another shotgun, and a Winchester rifle. Appellant claimed that all of these guns belonged to Edwards and that he had nothing to do with them. After Mrs. Bradshaw reported to the officers that Bradshaw was missing they went to Young's house. Upon being admitted by Mrs. Young, they found appellant under the bed, where also was found one of the shotguns. Appellant claims that he did not know the gun was there and that it had been put there by Edwards after appellant had gone to bed.

On the morning of the 10th of April officers went to Insall's place, and accompanied by him they followed the tracks of three parties and found in the river about 400 yards from the house, the body of deceased. He had been shot over the eye with a 25-caliber gun; the clothes had been removed and most of them were found in the river near by. The body had been cut open and seven rocks, aggregating in weight about sixteen or seventeen pounds, had been pushed into the body to weight it down. In the river at a place pointed out by appellant the officers found a 38-caliber pistol which was supposed to have belonged to deceased. In the barrel of that pistol was a loose bullet, which was pushed out of the barrel by one of the officers with a pencil. There was no exploded shell in the cylinder of the gun corresponding with the bullet in the barrel, but three unexploded cartridges were in the cylinder. Apparently on account of the information received the night before, Mrs. Bradshaw insisted that the officers go to the haystack, which they did before going to the river. They discovered no tracks about the haystack, nor anything else indicating that anyone had been about it recently.

Appellant told the officers that Edwards killed deceased. He also made two written statements regarding the matter. Upon his trial he testified

that he sat down on the bank of the river; that Edwards and deceased had gone down the river a little way and returned to near where appellant was sitting; that apparently they were in a good humor. That without any apparent reason Edwards knocked deceased down, and that deceased, as he got up, pulled his pistol, and undertook to fire at Edwards, but that the pistol flashed, and made a noise only about as loud as a cap exploding; whereupon Edwards pulled his pistol, the 25 automatic, and shot at deceased a number of times, and deceased fell into the river; that when appellant asked some question Edwards cursed him and told him to stay where he was; that Edwards got a stick and pulled the body out of the water, undressed it, and threw the clothes in the river. Appellant denied upon the trial that he knew anything about Edwards having cut the body open or placing the rocks in it, and denied having anything to do with the transaction. However, in a written statement theretofore made, while denying that he participated in the killing, or the disposition of the body, he admitted that he knew Edwards was placing the rocks in the body so that it would not float. Appellant undertook to explain the falsehood told Mrs. Bradshaw about the whereabouts of deceased upon returning to Insall's house after the killing, by testifying that Edwards had told him to tell that story and that he was afraid of Edwards and was afraid not to obey his instructions. He further testified that before they left the house he had gotten Insall away from Edwards and told him that Edwards had killed Bradshaw, and told him where the body would be found. This was denied by Insall; who said that appellant only said that they had whipped Bradshaw and run him away.

The foregoing are the salient facts. In our opinion we would not be authorized to disturb the verdict. Appellant and Edwards going away with deceased, coming back alone, and the palpable falsehood told by appellant after he returned, regarding deceased's whereabouts, in connection with all the other facts in the case, would be sufficient to authorize the jury to conclude that appellant was a party to the crime.

The issue whether appellant was a principal in the killing of Bradshaw was submitted to the jury in a fair and comprehensive charge by the court, in addition to which he gave two special charges, in one of which the jury were told that if they believed from the evidence that Bradshaw was killed and murdered as alleged in the indictment, but further found from the evidence that appellant was present at the time of the killing and that he sat or stood by and saw him murdered and said nothing to prevent or did nothing to prevent it, but that he did not aid in any way in the murder, and that he took no part in the murder, so as to constitute him a principal as defined in the main charge, or if they had a reasonable doubt thereof, they must acquit appellant. In the other special charge given the jury were told that it was not against the law

for a person to sit or stand by and see one person kill and murder another person.

The motion for rehearing is granted, the judgment reversing the cause is set aside, and the judgment of the trial court is now affirmed.

*Affirmed.*

ON APPELLANT'S MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant moves for a rehearing, and sets out at length and logically his objections to the charge of the court for its failure, in terms, to connect with the charge on insanity an instruction specifically stating that the burden of proof was on the state to show appellant sane, beyond a reasonable doubt, at the time he committed the homicide, if he did. The court did instruct the jury clearly on the presumption of innocence, and told them that the burden of proof was on the state throughout, and, in connection with the charge on insanity, he repeatedy told the jury both affirmatively and negatively, as appears from that part of the charge quoted in the opinion of Judge Hawkins, and other parts thereof, that if they had a reasonable doubt from the evidence as to the sanity of appellant at the time of the homicide, to acquit; and unless they believed beyond a reasonable doubt from the evidence that appellant was sane at such time, they should acquit. As said by Judge Hurt in Day v. State, 21 Texas App., 213, 17 S. W., 262, "We think this was sufficient." See Huggins v. State, 42 Texas Crim. Rep., 364, 60 S. W., 52; Lewis v. State, 59 Texas Crim. Rep., 51, 126 S. W., 1137. There might be cases in which direct mention of the burden of proof in immediate connection with a charge upon a particular issue, might be demanded, but in this case we find ourselves unable, after a most careful consideration, to see how such charge could have benefited appellant. All issues of fact rest upon testimony, or fall for lack of it. In this case the clear-cut issue as to insanity at the time of the homicide, was in the case, based chiefly upon the fact of former judgments of insanity rendered against appellant. All testimony controverting this issue was before the jury for what it was worth, and its weight was for their decision irrespective of whether it came from the state or the defense witnesses, upon direct or cross-examination. Such evidence, said the judge to the jury, must satisfy your minds beyond a reasonable doubt that this man was sane, as that term has been explained to you, at the time he did this killing, if he did it; and if said evidence has failed to do this, it is your duty to acquit him. Again we say no other instruction could have clarified that which was thus made clear, and that multiplication of words and legal phrases could but have made for confusion.

In view of the repeated and correct statements of the application of the doctrine of reasonable doubt in the charge, as applicable in determining appellant's sanity, we again express our belief that the use in one place

of the words "sane or insane" could be of no possible harm to appellant's rights. We are unable to follow appellant's complaint of the failure of the court to tell the jury that the judgments of insanity established the fact of such insanity. The trial court in his charge told the jury that the judgments established the fact that appellant was insane on January 8, 1930, the date of the last judgment, and also raised the presumption that he was insane at the time of this killing. The court could not tell them legally that such proof established appellant's insanity as of the date of the homicide, but he correctly told them that insanity at such time was an issue for their determination under the facts and circumstances before them.

Complaint is made of the fact that the issue of insanity at the time of the trial was not submitted to the jury or passed on in any manner. We find nothing in the record in any way raising such issue, either during the trial or antecedent thereto, the latter being ordinarily the proper time to have instituted such inquiry, if a decision of same be desired. As far as we know appellant was represented by attorneys of his own choosing, and we are impressed with a belief that had affidavit been made prior to this trial setting up present insanity, or evidence presented suggesting insanity at the time of trial, a jury would have been impanelled for the determination of that issue. Ramirez v. State, 92 Texas Crim. Rep., 38, 241 S. W., 1020. Failing to pursue this course, we do not believe the trial court called upon to submit the issue of present insanity here, and certainly he was not called on, as said in Soderman v. State, 97 Texas Crim. Rep., 30, 260 S. W., 607, upon his own initiative to stop this trial after it had begun and begin and conduct another. We find no evidence here indicating that appellant became insane after this killing, nor any suggestion that his mental condition at the time of the trial was other and different from what it was at the time of this homicide. No requested charge on this issue was presented. As far as we can tell, the only effort to have the issue of present insanity submitted or tried, was an exception to the court's charge for its failure to submit such issue. We do not think the complaint well founded under the facts of this case.

We cannot agree with appellant's contention that the finding of the jury on the question of guilt is contrary to the testimony, which appellant claims shows that deceased was shot and killed by Homer Edwards. The case was submitted on the law of principals, and the jury were told that if they found from the evidence that deceased was killed by Edwards, and that appellant was merely present and did not participate in the killing as a principal, or if they had a reasonable doubt of his such participation, they should acquit him. This we believe fully protected appellant.

Being unable to agree with the propositions advanced, the motion for rehearing is overruled.

*Overruled.*