# JASPER GLOVER v. THE STATE.

No. 16444.   Delivered January 24, 1934.
State's Rehearing Denied March 21, 1934.
Reported in 69 S. W. (2d) 136.

The opinion states the case.

*E. T. Simmang, Sr.,* and *John S. Simmang,* both of Giddings, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for 25 years.

It was charged in the indictment, in substance, that appellant, with malice aforethought killed Walter Luedecke by shooting him with a gun.

Appellant lived on the McWilliams place near the town of Elgin. Mrs. Janie Westbrook had charge of the place, as executrix. Appellant rented from her and took care of the cattle belonging to the estate. Under his contract, he retained half of the crops he raised. He had posted the premises and would permit no hunting thereon.

On the afternoon of October 11, 1932, Bill McWilliams, who had an interest in the McWilliams estate, and Walter Luedecke were crossing a pasture near appellant's home. They had with them a bird dog and some guns, their purpose being to do some hunting and train the dog. According to the testimony of McWilliams, Esteen Glover, a son of appellant, commanded them to leave the pasture, saying that no hunting was allowed. McWilliams called his attention to the fact that he was a part owner of the premises and had some cattle in the pasture. This apparently satisfied Esteen as to the right of McWilliams to hunt, but he declared that deceased had no right on the premises. McWilliams stated to him that deceased had come with

him and had a right to remain with him. McWilliams further testified that Esteen Glover then stated that appellant would make them leave. At this point appellant appeared on the scene, and, upon learning that the parties were hunting, ordered them to leave. Deceased then attempted to introduce himself to appellant, and offered him his hand. Drawing his gun, appellant told deceased not to touch him. Deceased then backed away from appellant, and "squatted down on his heels." An argument ensued between McWilliams and appellant with reference to McWilliams' right to be on the premises. McWilliams advised appellant that he did not intend to leave. Appellant then ordered deceased to leave the premises, and pointed his gun at him. Deceased replied that he would not leave until McWilliams went with him. Appellant then shot deceased in the head. At the time the shot was fired deceased's gun was twelve or fourteen feet from him, he being in no manner armed. After the shot was fired McWilliams exclaimed: "My God, Mr. Glover, you have killed that boy." Appellant replied: "G— d— him; that is what I intended to do." The foregoing constitutes a brief statement of the occurrence as detailed by the state's witness McWilliams.

Appellant did not testify as a witness in his own behalf. His son Esteen gave testimony raising the issue of self-defense. Several witnesses testified that in their opinion appellant had been insane for a number of years. Appellant introduced in evidence the judgment of the county court showing that in 1920 he had been convicted of insanity and placed in an insane asylum. The judgment was in full force and effect at the time of the homicide, and at the time of the present trial.

Witnesses for the state testified that in their opinion appellant was sane.

On the issue of insanity the court instructed the jury as follows:

"In regard to the issue of insanity presented in this case, you are instructed that the law presumes every person to be sane until the contrary is established. The judgment of the County Court of Brazos County read and evidenced before you conclusively establishes that the defendant was of unsound mind on the 31st day of August, A. D. 1920, and that it was at that time necessary that he should be placed under restraint, but it is not conclusive as to his subsequent condition of mind. The condition of the defendant's mind at the time the killing occurred, if you believe he killed the deceased, is the matter to be determined under the plea of insanity, and is to be determined from all the evidence bearing upon the question. If you believe

from the evidence that the defendant was not restored to reason and that subsequent to the date of said judgment and to his release and discharge from the asylum, the defendant was afflicted with a character of insanity habitual in nature, to that degree that he would not know what he was doing in the commission of the act charged, or if he did know what he was doing, then that he did not have sufficient reason to comprehend its character and consequences and to know that it was wrong to do the act, then it devolves upon the state to prove beyond a reasonable doubt that the killing of Walter Luedecke by the defendant, if you believe that he killed him, occurred at a time when defendant was in a condition of mind called a lucid interval, that is that at the time the defendant killed the deceased his mind was in a condition that he knew what he was doing and that he knew the act was wrong and that he had sufficient will power to control his action; and if the evidence satisfies you that the defendant has, since the date of said judgment, been afflicted with that character of habitual insanity mentioned above, to the degree above defined, and if the evidence does not satisfy you beyond a reasonable doubt that at the time of the killing of the defendant he was in a condition of mind to know what he was doing, and that the act was wrong and that he had sufficient will power to enable him to refrain from such act, you will find him 'Not Guilty.'

"If, however you do not believe from the evidence that defendant had been afflicted with that character and degree of insanity above defined and described, and if you should believe from the evidence that the defendant has, since the date of the judgment read before you, been afflicted with recurrent,—that is, that he was at times sane, and at other times insane,—then it devolves upon defendant to prove by a preponderance of the evidence, to your satisfaction, that, at the time he killed the deceased (if he killed him) he was laboring under such defect of reason from disease of the mind that he did not know what he was doing, or, if he did know, that he did not know the difference between right and wrong of the particular act, and that he did not comprehend the character and quality of such act; and, if it has not been so proved, the defense of insanity cannot avail the defendant if you believe he is otherwise guilty as charged."

Appellant timely and properly excepted to the foregoing charge on the ground that it placed the burden of proving insanity upon him, and failed to place the burden upon the state to prove that he was sane when he fired the fatal shot. The principles controlling are set forth by Judge Lattimore in the

opinion on Motion for Rehearing in Davidson v. State, 4 S. W. (2) 74. We quote from the opinion as follows:

"It seems well established by the authorities of this state, as to not admit of controversy, that, when at some time prior to the commission of the offense the accused has been adjudged insane by a court of competent jurisdiction which is not shown to have been set aside or legally vacated in any way, this shifts the burden of proof from the defendant to the state in regard to insanity. Under all the authorities when one charged with crime seeks to defend upon the ground of irresponsibility by reason of insanity, the final test is whether or not the accused was so mentally deranged at the time of the commission of the alleged offense as not to know the right from the wrong in the particular transaction, and that it is a thing he ought not to do. While this is true, it seems also universally recognized that, because of the presumption of sanity in ordinary cases, the burden of supporting a plea of insanity by one who interposes it, in such ordinary case, is put upon the accused, and he must show by a preponderance of evidence that he was insane at the time—but this burden shifts in case there has been an unvacated adjudication of insanity against him prior to the time of the alleged commission of such offense, and in such case the court should tell the jury that the state must prove beyond a reasonable doubt that, at the time of the commission of the offense, the accused was sane, etc. The shifting of this burden of proof may be a matter of value to the accused, and he is entitled to whatever benefit may arise by reason thereof."

See, also, Young v. State, 46 S. W. (2d) 991; Yantis v. State, 255 S. W., 180.

We think appellant's exception was well taken. The burden of proof was improperly placed upon appellant in advising the jury that if they did not believe appellant had been afflicted with insanity of a permanent nature, but did believe that at times he was sane, then it devolved upon him to prove by a preponderance of the evidence that at the time he killed deceased he was laboring under such defect of reason from disease of the mind that he did not know what he was doing, etc. The instruction last mentioned contradicts the first part of the court's charge in which the burden of proof was placed on the state, and shifts such burden to the defendant under the conditions stated in the charge, notwithstanding the fact that the judgment of lunacy had in no wise been vacated or annulled and was in full force and effect at the time of the trial. Under the decisions, the judgment of lunacy being in effect, the burden rested upon the state to show beyond a reasonable doubt that

appellant was sane at the time he committed the offense. It appears that the charge was taken from that set forth and approved in Hunt v. State, 26 S. W., 206. Most of the charge set forth in Hunt's Case has been approved in the subsequent opinions of this court. However, it appears that part of the charge in question cannot be upheld. To this extent the opinions in Davidson v. State, supra, and Young v. State, supra, have modified the holding in Hunt's Case.

Bill of exception No. 1 presents the following occurrence: Appellant introduced the judgment of lunacy obtained against him in the county court of Brazos county in 1920. This action was followed by introducing witnesses who testified that in their opinion appellant had been insane since 1920. Appellant's wife testified that she had secured a furlough for appellant shortly after he was incarcerated in the insane asylum, and that the physician in charge had advised her to watch appellant closely, as he might become dangerous. She said that appellant had not been back for examination by the physicians at the asylum, and further, that he had at no time regained his sanity. After this testimony had been introduced by appellant, the state brought to the stand an employee of the asylum in which appellant had been restrained. He exhibited several pieces of loose paper he had found in an envelope among the records of the asylum. Someone had written on one of these sheets the statement that appellant had been "discharged as restored on August 24, 1921." The witness did not know who had made the entry, as he was not employed at the hospital at the time it was made. We think appellant's objection to this testimony should have been sustained. That it was prejudicial is obvious. It met the testimony of appellant's witnesses to the effect that he had at no time been restored to sanity. Such testimony was obviously hearsay.

Bills of exception 2 and 3 relate to appellant's objection to the testimony of witnesses to the effect that Esteen Glover, in the absence of appellant, had talked to them at the scene of the homicide sometime after its occurrence and discussed the relative positions of the parties and described the transaction. It appears that Esteen, in his testimony given on the trial, declared that deceased was walking toward appellant in a belligerent manner at the time appellant shot him. It was upon his testimony that the court predicated the charge on self-defense. In the statements attributed to Esteen by the state's witnesses, it was shown that deceased was sitting down at the time appellant shot him and did not have his gun in his possession. In other words, these statements contradicted the testimony of

Esteen on the main trial and disclosed that deceased was making no attack on appellant. The bills of exception recite that at no time during his examination was Esteen Glover asked by the state if he made these conflicting statements to the parties. It clearly is shown in the bills that no predicate of any character was laid. The bills present error. It is the rule that before a party is entitled to impeach a witness by proof of contradictory statements a predicate must be laid calling the attention of the witness to the time, place and person to whom it is claimed the contradictory statements were made. Branch's Annotated Penal Code, sec. 179; Jordan v. State, 10 Texas, 479; Martinez v. State, 53 S. W., 634.

Bill of exception No. 9 relates to appellant's objection to the testimony of witnesses to the effect that sometime prior to the homicide appellant had cursed and abused them and ordered them off of his place. The testimony of these witnesses related to a separate and distinct transaction. The proof on the part of the state was direct. A different conclusion might be reached if the case had been one upon circumstantial evidence. We are unable to perceive what light the testimony shed upon the issues involved in the present trial. It is the general rule that it is error to prove that the accused has had a difficulty with a third party when such difficulty is a separate and distinct matter not connected with the issue to be tried. Branch's Annotated Penal Code, sec. 166; Haney v. State, 122 S. W., 34; Dimry v. State, 53 S. W., 853.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—There can be no doubt that some language contained in the charge on insanity found set out in Hunt v. State, 33 Texas Crim. Rep., 252, 26 S. W., 206, has resulted in some confusion. In the case of Morse v. State, 68 Texas Crim. Rep., 351, 152 S. W., 927, Judge Davidson very clearly sets out the three controlling rules and states pertinently the effect of a prior judgment of insanity. We quote from his opinion as follows:

"Another question is presented of serious import, to-wit: the court failed to charge on permanent or continuing insanity. In other words, the court charged the burden of proof was upon

the defendant as if the question of insanity had not been shown by previous judgment of a court. There is objection to the charge and insistence that the court should have charged the jury in accordance with the fact that, where insanity is shown to exist and is of a permanent nature, the court should charge that the burden of proof is on the state, and not on the defendant. Three rules seem to be fairly well stated in this connection: It is the presumption of law that all men are sane, and the burden to prove insanity is upon the party alleging it. That is the first rule. The second is: Insanity admitted or once proved to exist is presumed to continue. Third. If a recovery or a lucid interval is alleged to have occurred, the burden to prove such allegation is on the party making it. The presumption arises in cases where the insanity is continuing and permanent in its nature, or where the cause of the disorder is continuing and permanent. It is unnecessary to cite authorities to support these rules. *In Texas the rule is, that where insanity has been once shown to exist as by judgment of the court, the presumption is that insanity continues, and the burden of proof is upon the State, to show otherwise and the jury must be so informed.* Hunt v. State, 33 Texas Crim. Rep., 252; Wooten v. State, 51 Texas Crim. Rep., 428; Wisdom v. State, 42 Texas Crim. Rep., 579; Sims v. State, 50 Texas Crim. Rep., 563; Elston v. Jasper, 45 Texas, 409."

The italics are ours. It will be observed that the Hunt case, supra, is cited as supporting the principles announced in the Morse case, the contradictory language in the former case apparently not having been observed at the time.

We regard the foregoing quotation to be a correct statement of the law. The cases cited in our original opinion are in line therewith.

The motion for rehearing is overruled.

*Overruled.*