# RICHARD W. MCGEE V. STATE.

No. 24701. December 13, 1950.
Rehearing Denied April 18, 1951.

640

*Burks & McNeil, Lubbock,* and *Simpson, Clayton & Fullin-*

*gim,* all acting by *E. A. Simpson*-of Counsel, Amarillo, for appellant.

*Lloyd Croslin,* District Attorney, *E. G. Pharr,* Assistant District Attorney, *George Dupree* (Special Prosecutor) all of Lubbock, and *George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

The offense is murder; the punishment, death.

In March, 1948, Betty Jane Allston, the daughter of R. L. Allston, deceased, met appellant while each was a student in Denton, Texas. Within a period of four months the acquaintance had progressed to the point that they had become engaged to be married the following December. On the evening of July 5, 1948, appellant, Betty Jane Allston, Mrs. Allston, and the deceased met at the Allston home in Lubbock, Texas, to discuss the marital plans. Deceased registered an objection, suggesting that the marriage be postponed until after they had finished school. Appellant became angered at this, and made the statement that he was going to marry the daughter regardless of the opposition. Appellant and Betty Jane then left the house to take a walk and discuss the situation. Appellant wrested the engagement ring from the girl's finger, throwing it down but shortly thereafter retrieving it. At that time he told her he was going to marry her and if her mother and father tried to come between them he would kill the entire family.

The next day, July 6, appellant went to a pawn shop and there priced, with the view of purchasing it, a pistol. The purchase was not completed, appellant advising that he would come back later. On the morning of the next day, July 7, appellant appeared at the Allston home. He again asked Betty Jane if she was going to marry him, to which inquiry he received no answer. Appellant is next seen back at the pawn shop, where he purchased the .38 pistol.

It appears that appellant, after purchasing the pistol, went direct to the Allston home, where he talked with the deceased, whom he asked: "Does that mean that I am through?" Deceased was heard to give an affirmative reply. Whereupon, a shot was heard and deceased lay mortally wounded, with a bullet through his neck from which he died a few hours thereafter.

After the shooting, under circumstances strongly suggesting

a kidnaping, appellant commandeered Bill Garrett and compelled him to drive him to Brownfield, Texas. To Garrett, appellant admitted that he had killed deceased.

The following day, July 8, appellant was arrested in Austin, Texas, in possession of the pistol which he had the previous day purchased at the pawn shop in Lubbock.

The sole defense was that of insanity, it being contended that appellant was insane both at the time of the commission of the alleged offense and at the time of the trial.

No necessity exists to state at length the evidence supporting this defensive theory. It is sufficient to say that it is difficult to understand how a stronger defense of insanity could be developed in the trial of a criminal case. We say this in view, especially, of the fact that the medical and expert witnesses all agreed that the appellant was suffering from some abnormal mental condition or dementia. Prominent psychiatrists attested the fact that such condition rendered the appellant incapable of knowing right from wrong or the nature and extent of his acts. On the other hand, Dr. Baugh, testifying in behalf of the state and after conceding that appellant was, from a medical standpoint, insane, testified as follows:

"I simply say that he still had mind enough to know the right and wrong of his act on July 7 and to know the nature and consequences of his acts."

This statement by the witness, in connection with his other testimony, very clearly draws the distinction between medical and legal insanity. From a medical standpoint, one may be insane by reason of mental disease or mania, yet, from a legal aspect, not unless or until his mental condition has reached the point where he is unable to distinguish right from wrong and to know the nature and consequences of his acts is he exonerated or excused from crime committed while in that condition. Ross v. State, 153 Tex. Cr. R. 312, 220 S. W. 2d 137.

The facts support the jury's conclusion, and appellant's contrary contention is overruled.

In the fall of 1942, appellant enlisted in the Army and, shortly thereafter, saw service in Italy. It appears that he went AWOL and was sent to an air force stockade, and from there was sent to a hospital, where his condition was diagnosed as "psychosis," and on June 5, 1944, as "dementia praecox,

paranoid type." On successive dates thereafter, June 13 and July 2, 1944, he was transferred to other hospitals, the July 2nd transfer being to Stark General Hospital, where the diagnosis was continued. Thereafter, on July 9, 1944, he was again transferred, and admitted to Darnall General Hospital.

On September 4, 1944, a board of medical officers, after having appellant under observation for approximately two months, recommended his discharge from the Army because of a finding that he was suffering from dementia praecox, unqualified. Because of such condition appellant was, on September 26, 1944, discharged from the Army.

He returned home, and in the time intervening between that date and July 26, 1947, was a student in some five different schools and universities.

On the date last mentioned he was, by order of the county judge of Travis County, upon the testimony of two reputable physicians, committed to the Veterans Hospital at Waco, Texas, for a period of ninety days for observation and treatment for mental disease.

It is appellant's contention that the order and finding of dementia praecox, unqualified, by the medical board and appellant's discharge because of that condition constitute such finding and judgment as to have the effect of an adjudication that appellant was, at that time, an insane person. Likewise, it is insisted that such is the effect of the order of the County Judge of Travis County committing appellant to the Veterans Hospital for observation.

In view of this contention, appellant insisted throughout the trial that he was entitled to have his insanity defense submitted from the standpoint that he was presumed to be insane rather than sane, and that he should not have been required to establish his defense of insanity before the jury by a preponderance of the evidence.

If the orders and decrees mentioned are to be construed as adjudicating appellant a lunatic or person of unsound mind, then his contention would be correct, because an unvacated judgment of insanity shifts the burden of proof to the state to establish the sanity of the accused rather than place the burden of proof upon a defendant to prove his insanity by a preponderance of

the evidence. Glover v. State, 125 Tex. Cr. R. 605, 69 S. W. 2d 136.

In order for the decree of the military tribunal, as well as the order of the county judge, to have the legal effect of adjudicating appellant as a person of unsound mind, it is necessary, first, that jurisdiction to render such decree exist. Under the laws of this state, one can be adjudicated a lunatic or person of unsound mind only at and by the verdict of a jury. Unless and until a jury has so determined, there can be no adjudication of that fact. It is apparent, therefore, that appellant's contention in this respect is untenable.

Under the laws of this state, jurisdiction of the trial of lunatics or persons of unsound mind not charged with a criminal offense is in the county court. A judgment adjudicating one to be of unsound mind can be entered only upon the verdict of a jury so finding. Title 92, R. C. S. Likewise, such is true where a trial is had incident to or in connection with a criminal action. We know of no authority whereby a judge or administrative tribunal has authority to adjudicate one to be a lunatic or person of unsound mind. It has been held that such could not be done even though authorized by statute. White v. White, (Tex. Civ. App.), 183 S. W. 369, 196 S. W. 508. It is apparent therefore, that appellant's contention was properly overruled by the trial court.

Art. 34, P. C., provides (a) that no act done in a state of insanity can be punished as an offense, and (b) that one who becomes insane after the commission of an offense cannot be tried while in that condition. The first of these—that is, insanity at the time of the commission of the alleged act, is a complete defense against the act charged, while the other is not a defense to the act charged but has the effect, only, of barring a trial so long as the insanity exists.

The instant facts raise both of these issues. It goes without saying, then, that appellant was entitled to have the jury instructed in accordance with these defenses. The trial court so recognized, and submitted the defense of insanity at the time of the commission of the alleged offense, in the 16th paragraph of his charge, as follows:

"Now, if you find and believe from the evidence, beyond a reasonable doubt, that the defendant, Richard W. McGee, did kill the said R. L. Allston by shooting him with a gun, as charged in the indictment, but you further believe from a preponderance

of the evidence that, at the very time he committed the act, the defendant, Richard W. McGee, did not have sufficient mental capacity, resulting from dementia praecox, or schizophrenia, or manic-depressive, or either of the aforementioned, or from any disease of the mind or any form insanity, to know the nature, quality or consequences of the very act he was committing, or, if he did know the nature, quality or consequences of the act, yet he did not know he was doing wrong, or did not know the difference between right and wrong as to the particular act charged against him in this cause, then you will find him not guilty on the grounds of insanity, and let your verdict so say."

The forms of verdict in connection with the above charge were given as follows:

"If you find the defendant not guilty on the grounds of insanity as set forth in the preceding paragraph No. 16, the form of your verdict will be either the following:

" 'We, the Jury, find the defendant not guilty on the grounds of insanity at the time the act is alleged to have been committed, but sane at the time of this trial,' or

" 'We, the jury, find the defendant not guilty on the grounds of insanity at the time the act is alleged to have been committed, and insane at the time of this trial.' "

This issue of insanity at the time of trial was submitted as follows:

"Now, if you find and believe from the evidence, beyond a reasonable doubt, that the defendant, Richard W. McGee, did kill the said R. L. Allston by shooting him with a gun, as charged in the indictment, but you further believe, from a preponderance of the evidence, that at the time of this trial, the defendant, Richard W. McGee, does not have sufficient mental capacity, resulting from dementia praecox, or Schizophrenia, or Manic-depressive, or either of the aforementioned, or from any disease of the mind, or any form of insanity to know the nature. quality or consequences of the act with which he is charged, or to understand the difference between right and wrong, or to make a rational defense against the act charged, then you will find by your verdict that the defendant is insane at the time of this trial."

In connection with said charge, the jury was further instructed as follows:

"In the event you should find and determine, from a preponderance of the evidence that the defendant is insane at the time of this trial, then you will further find and determine under the instructions given you in Paragraph 16, of this Charge, whether the defendant was sane or insane at the time of the alleged offense.

"Now, if you find the defendant, Richard W. McGee, was sane at the time the act is alleged to have been committed but insane at the time of this trial, the form of your verdict will be as follows:

" 'We, the jury, find the defendant to have been sane at the time the act is alleged to have been committed but insane at the time of this trial.' "

Appellant insists that these charges, submitting, respectively, insanity, at the time of the commission of the alleged offense and at the time of trial, place an undue burden and limitation upon him. In this connection he insists that nowhere is the jury authorized or required to find upon each of the insanity pleas without, in connection therewith, making other and additional findings touching his sanity or insanity.

In charging the jury as he did, the trial court appears to have been so authorized to do by the provisions of Sec. 2 of Art. 932a, Vernon's C. C. P. We are unable to say, therefore, that the trial court was not justified in so doing.

Appellant insists that he was entitled to have the jury instructed to the effect that if they entertained a reasonable doubt as to his insanity at the time of the commission of the alleged offense and at the time of the trial, such doubt should be resolved in his favor.

To have given such a charge would have shifted the burden to the state of proving appellant sane at the times he insists he was insane—which would be contrary to the presumption that all persons are sane.

As supporting his contention, appellant cites the cases of Johnson v. State, 150 Tex. Cr. R. 411, 201 S. W. 2d 832; Dent v. State, 46 Tex. Cr. R. 166, 79 S. W. 525; Williams v. State, 37 Tex. Cr. R. 348, 39 S. W. 687.

The holding in these cases was founded upon facts showing,, or tending to show, that the accused was rendered mentally in-

capable by reason of some blow or injury inflicted immediately before the time or in connection with the commission of the act for which he was upon trial. The instant facts show no such condition.

Dr. White, a psychiatrist, upon direct examination, testified in support of appellant's insanity defense. Upon cross-examination, state's counsel inquired of the witnesses: ". . . is there anything abnormal in students going to classes and making their grades as this Defendant did at North Texas State Teachers College in the Spring Semester of 1948?"

Counsel for appellant objected to the question unless the state could show that the appellant had made his grades at the school and at the time inquired about. As to the objection, the trial court stated, "I think that is well taken."

Thereupon, counsel for the state said in presence of the jury:

"If the Court please, we haven't it (referring to the testimony that McGee made his grades at North Texas State Teachers College) in the shape that we can prove it. *We have a statement that it is not in shape to prove it up, so I will withdraw the question.*" (Italics supplied.)

Appellant's objection to that part of the statement italicized above was by the trial court sustained and, upon appellant's request, the trial court instructed the jury not to consider for any purpose "the remarks of counsel about grades that the Defendant might have made in North Texas State Teachers College."

The bill of exception presenting this matter contains the following certificate, viz.:

"BE IT FURTHER REMEMBERED, that in this manner the State's private prosecutor, the Honorable George W. Dupree, placed in evidence a fact highly important and militating against the Defendant's defense of insanity, which was not supported by the evidence. And the State's counsel, in open Court, when the Defendant objected to this being made, stated in intensifying the error, that he did not have proof of the facts that the Defendant made his grades at North Texas State Teachers College, in the Spring Semester of 1948, in shape to prove it up before the jury. He made the statement that he did have a statement to that effect, but that it was not in shape to prove up before the jury, so he withdrew his question."

Appellant insists, first, that the statement of state's counsel as to appellant making his grades was such an error as could not be cured by the trial court's instruction, and, second, that the certificate above quoted constitutes a certificate of error by the trial court.

There is no question but that counsel for the state should not, directly or by reference, have gotten before the jury, as was here done, the fact or impression that appellant made his grades in school unless he was in position to establish such fact by proof. This is the effect of the trial court's certificate in the bill of exception. The trial court did not certify, and we are unable to reach the conclusion, that the matter was of such a prejudicial or erroneous nature as that it could not be withdrawn from the jury by the trial court's instruction.

Appellant argues, in support of his position that the error above mentioned constitutes reversible error, that, this being a death penalty case, this court should not speculate as to the harmful effect thereof and he cites authorities supporting his position, among which is Fritts v. State, 114 Tex. Cr. R. 542, 26 S. W. 2d 643.

The disposition we make does not require us to speculate as to injury. What we hold is that the statement of state's counsel was such as could be, and was, effectually withdrawn from the jury.

In his closing argument, state's counsel made the following statement to the jury:

"I want you to understand that my position in this case is in no way a matter of private prosecution, as Mr. Burks has tried to leave the impression that this case was built around private prosecution. I stand before you, representing the State of Texas. I stand before you, representing justice, in what I consider to be a cold blooded murder case."

Appellant's objection to the statement, and especially the reference to "a cold blooded murder case," was sustained, and the jury were instructed not to consider the statement.

Appellant insists that, notwithstanding such instruction, reversible error is reflected because the reference to a "cold blooded murder case" constituted unsworn testimony by counsel for the state. The case of Dowd v. State, 104 Tex. Cr. R. 480, 284 S. W. 592, is cited as supporting appellant's contention. In

that case, the argument held to be erroneous was "to the effect that there was gold in the pocket of one of defendant's attorneys that belonged to deceased, and to his apology to deceased's wife for failing to subpoena the long list of witnesses handed him by her, from whom he could have proved the good reputation of deceased, but didn't think it necessary, and that he knew all about how the killing occurred, and that it was not justified but was cold-blooded murder. This argument was improper, out of the record, and should not have been made. Frazier v. State, 100 Tex. Cr. R. 157, 272 S. W. 454; Skirlock v. State, 100 Tex. Cr. R. 178, 272 S. W. 782."

While it is true that in the latter part of the argument the statement was made "that he knew all about how the killing occurred, and that it was not justified, but was cold-blooded murder," there is nothing to show that the reversal was predicated upon this particular part of the argument, as distinguished from the argument as a whole. But be that as it may, there is quite a difference between the statement used in the Dowd case and that used in the instant case. In the Dowd case the argument appears definite as a statement by counsel of what he knew as a fact, while here the argument complained of constitutes only the expression of an opinion. From the standpoint of the state, the killing was cold-blooded. We are unable to agree that counsel for the state was not justified in stating to the jury that he so considered the case.

There was testimony showing that some years prior to the homicide and while appellant was a student in the San Marcos Baptist Academy he received a severe head injury by reason of falling from the dome of the school building.

Special prosecutor, in opening argument to the jury in connection with said proof, made the following statement to the jury:

"There, day after day, for over a year, this crazy boy, away from home and boarding there, makes his grades and you know, you know that with the power of this defense that somewhere, some place, if he was so crazy, that they could have found somebody in San Marcus Academy to tell you the facts about it."

Appellant's only objection registered to this argument was, "We take a bill to that argument."

The objection was overruled.

The bill of exception presenting this matter contains the following certificate:

"BE IT FURTHER REMEMBERED, that in fact and in truth, prior to the time that Mr. Dupree made the argument above quoted to the jury, which he did do in the course of the first and opening argument made to the jury by any person, there was absolutely no evidence in this case to show that Richard W. McGee, while he was a student at the Baptist Academy at San Marcos, boarding away from home, had made his grades. And there was no evidence in this case to show that while a student at the Baptist Academy he did make his grades. And, further, there was no evidence in this case to show anything concerning the power of the defense, other than that it procured and put in evidence the testimony of a defensive nature that is shown in the record in this case. . . . . . . . .

"BE IT FURTHER REMEMBERED, that in this manner, testimony was put before the jury, through Mr. Dupree's argument, to the effect that the Defendant, Richard W. McGee, while a student at San Marcos Baptist Academy, prior to the homicide, had made his grades in said Academy, and there was no evidence to support this."

The trial court qualified the bill, as follows:

"The testamony of the witness, Mrs. H. H. Stull, was to the effect that as best she remembered the Defendant finished school that year. There was no testamony in the record that the Defendant failed to make his grades. Mrs. Stull did testify that she thought he failed a subject or two but that she was not sure."

The state challenges consideration of the bill of exception because the objection fails to register any specific objection to any particular part of the argument or to state any grounds for the objection whereby the trial court would be made acquainted with appellant's complaint. The state's position is sustained. Watkins v. State, 153 Tex. Cr. R. 559, 223 S. W. 2d 24, and authorities there cited.

Other bills of exception appearing in the record have been examined, and are overruled without discussion.

The jury having determined adversely to appellant the disputed issue of fact and there appearing no reversible error, the judgment is affirmed.

Opinion approved by the court.

OPINION ON MOTION FOR REHEARING.

MORRISON, Judge.

After hearing a most forceful presentation of appellant's defense on motion for rehearing, this court, as now constituted, has again carefully reviewed the statement of facts and briefs consisting of 1107 pages and will attempt to discuss this case in the order in which the same is presented to us on motion for rehearing.

Appellant groups the following four bills under what he denominates his Proposition One.

Bill of Exception No. 24 complains of a portion of the district attorney's closing argument wherein he suggested to the jury that their verdict should say to the daughter of deceased that her father kept his promise to her to take care of her. The bill shows that the daughter had testified as to such a promise received from her father immediately after he was shot. Since this promise was legitimately in evidence, we feel that a discussion by the district attorney thereof was proper.

In our original opinion we held that the incident complained of in Bill of Exception No. 5 was of such a character that it could be, and was effectively withdrawn when the trial court instructed the jury not to consider it for any purpose and that the same, therefore, presented no error. With the soundness of this holding, we remain convinced; however, we discuss the matter further in the light of the alleged certification of error by the trial court.

The question propounded by the prosecutor was:

"Dr. White, is there anything abnormal in students going to classes and making their grades as this defendant did at North Texas State Teachers College in the spring semester of 1948?"

Upon objection being made, the state's counsel stated to the court that they did not have this testimony in the shape to prove it, so they would withdraw the question. The appellant's counsel pursued the matter further by reserving an exception to the special prosecutor's statement that "he has it but not in the way to prove it before the jury." At the request of the defense counsel, the court instructed the jury not to consider the remarks of the counsel about the grades the defendant might have

made in the North Texas State Teachers College. Thereupon, appellant's counsel reserved an exception, notwithstanding the court's instructions.

The trial court then certified that the only testimony offered bearing on the point was the testimony of one teacher to show that the appellant had made *his grades* in the particular subject this teacher was teaching at said college and certified further that the state did not offer any evidence to show that appellant made *all* of his grades in that college.

Continuing his certification, the trial court gives the benefit of his conclusion from the foregoing and therein states that there was placed in the evidence a fact highly important and militating against appellant's defense of insanity and not supported by evidence and that state's counsel intensified the error in the remarks to the effect that he did not have the testimony in shape to prove it up. The trial judge further advises that, so believing, he immediately instructed the jury that they must not consider the prosecutor's statement for any purpose at all and withdrew it from the jury.

As we view this certification, it was that the court considered such statement harmful and that is why he withdrew it from the jury. In addition, we are not bound by any certificate of the court where we have the entire matter complained of before us in the bill. See the more recent cases cited in Texas Digest, Criminal Law, 1111(4).

Bill of Exception No. 22 relates to argument of the district attorney in which he stated that he stood before the jury representing the state ". . . in what I consider to be a cold-blooded murder case." It will be noted from the bill that nothing in the district attorney's argument was out of the record other than an expression of opinion by the district attorney as to what he thought of the case he was prosecuting.

The facts here may be distinguished from those in cases which we have found, in that, from the bill itself it is apparent that the statement was made in answer to the defendant's argument that the case had been built around private prosecution and further in that there was no issue that appellant, without legal provocation, shot deceased. His only defense was that he did so while insane.

With these distinctions in mind, we have a case in which the

district attorney stated that, as a representative of the state, he considered the case he was prosecuting to be such as he described.

The cases cited by appellant differ from the case at bar, in that, in each of these there existed an unsworn statement of state's counsel on a material fact harmful to defendant.

We profess no tolerance of any out-of-the-record argument of a prosecutor, but we do not feel that such has occurred when the prosecutor expresses his opinion of defendant's guilt from the evidence legally before the jury. By his statement he added nothing to the record in the case.

Bill of Exception No. 19 is presented by appellant, but not discussed. An examination of the bill reveals that the only objection interposed by appellant was: "We take a bill to that argument." Such an objection raises nothing for review by this court.

Appellant's fifth point of error is leveled at Paragraph 14 of the court's charge, which is: "By 'preponderance of evidence' as used in this charge is meant the greater weight of credible testimony." This follows the paragraph in the charge which places the burden of proving the defense of insanity on defendant by a preponderance of the evidence. Appellant states that the question which he presents has not been passed upon in Texas in a criminal case. In his objections to the court's charge, he complained that its giving was unnecessary. This court feels that, since the term had been used in the preceding paragraph, it was proper to define the same. We hold this paragraph not to be subject to the objections raised.

Appellant, in his Bill of Exception No. 10, insists that reversible error is reflected in the following matter, which was not discussed upon original disposition.

Eva McGee, a sister of the appellant, upon direct examination by the appellant testified fully and at length to acts and conduct of the appellant beginning in early childhood, upon which she, as a lay witness, expressed the opinion that appellant was insane. Some of those incidents related to appellant's acts after having been beaten in playing croquet, checkers, and monopoly, in which appellant was depicted as breaking the mallets, stamping the wickets down, and tearing up the checker

and monopoly boards. Relative to the croquet games, witness testified:

"I have seen it happen several times when he would get mad and kick all the wickets down . . ."

Further testimony was that she did "not recall that anything had happened to make him mad then, other than I had beat him in the game."

As to the monopoly game, witness testified: "A lot of times he would get mad over this game and break up the board and destroy it completely because of little instances like he couldn't get the certain kind of property he wanted out of it."

On cross-examination she was asked about six of said incidents specifically and answered that the appellant was mad at the time of the incidents described.

On redirect examination the cross-examination was referred to, and the witness was asked, "At that time, did you think he was mad or insane?" or a question of similar import. The exclusion of the answer to these questions forms the basis for the bill.

It will be noted that the answer to Question #2 is not shown, and, therefore, so far as this question is concerned, the bill is defective, Robinson v. State, 112 Tex. Cr. R. 521, 16 S.W. 2d 233. The answers to one, three, four, and six were not responsive to the questions asked and, therefore, reflect no error, Ingram v. State, 113 Tex. Cr. R. 75, 19 S.W. 2d 41.

Question #5 first referred to the cross-examination and then asked, "Now, did you mean in making that answer, did you mean to say that you were meaning to convey to the jury the statement that he was mad in the sense of human anger, or that he was mad in the sense of being insane?" It was answered, "I meant to say that he was insane."

We must here determine whether error is committed when a witness has testified fully on direct examination, is then cross-examined, and then on redirect is asked again if he meant what he had testified to originally.

This is not a case, like those cited by appellant, where a witness is allowed to rehabilitate himself on redirect examina-

tion by explaining something that had occurred prior to the trial and about which he had been cross-examined.

We know of no rule which authorizes repetition so that the party eliciting such answer may have the last word.

This witness had testified on direct examination, as had many other witnesses, that she considered appellant insane. She had further testified that he had gotten mad and committed certain acts. We can see no necessity for rehabilitation of the witness. The answer excluded said no more and no less than what she had testified to on direct examination, Thompson v. State, 104 Tex. Cr. R. 637, 285 S.W. 826; Texas Digest, Criminal Law, Key 1170 (3) (4).

Appellant's seventh point again raises the question of the correctness of the court's charge in which the burden of proof to establish appellant's insanity was placed upon him. Appellant once more insists that the findings of the military board should have the same legal effect as an adjudication of lunacy by a jury in a Texas court.

Appellant presents a most forceful argument predicated upon the question of jurisdiction of the person of appellant; that is, he says that since the Army had jurisdiction of appellant at the time of the board's findings that such findings should have the same dignity as the action of the jury in a court which had jurisdiction to try the sanity of a civilian living within the jurisdiction of said court. We cannot agree that jurisdiction alone will supply all the requisites of a valid judgment.

We know not whether appellant was given notice of the hearing of the medical board; we know not whether he had an opportunity to cross-examine witnesses who were heard; we know not the issues for determination by the board, whose rules of procedure were pronouncements of military authorities rather than of legislative origin.

These and others are known qualities in a hearing before a jury in lunacy in our county court or a jury in the district court where there is a hearing on the question of insanity.

We have no authority, either statutory or otherwise, authorizing us to give to the findings of such board the same effect as a final judgment of a court of competent jurisdiction.

Finding no reversible error, appellant's motion for hearing is overruled.