LONNIE BRINKLEY V. STATE

No. 27,198. December 15, 1954
Rehearing Denied March 9, 1955
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) April 27, 1955

414

*Preston Pope Reynolds,* Dallas, and *Divine & Gordon,* Houston, for appellant.

*Dan Walton,* District Attorney, *Eugene Brady,* Assistant

District Attorney, Houston, and *Wesley Dice,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, death.

The appellant and his wife (the deceased) were living in one side of a duplex-type house, while the other side was occupied by their son and his family. Only the appellant, the deceased and their son were present when the homicide occurred. The son, Marvin, was shot in the neck but did not die, and it is principally upon his testimony that this conviction growing out of the death of his mother rests. Marvin testified to an unprovoked killing. The appellant testified that he shot in self-defense from an attack by Marvin, that he then had a "blackout" and did not remember shooting the deceased.

Appellant and deceased had been married thirty-nine years. They were divorced in 1930 and then resumed their marital status some eighteen months later. Their last several years together had been marked with turbulence.

Marvin testified that on the day of the homicide he entered his parents' apartment and was informed by his mother that the appellant had accused her of trying to poison him. He stated that the appellant was in the adjoining room and that he remonstrated with him about having made such an accusation and the appellant replied, "I am going to put a stop to it, put an end to it," and, "That goes for you too"; that he started into the bedroom to talk to the appellant and was met at the door with a flash. Marvin stated that he fell to the floor, wounded in the neck, and pretended to be dead, but through the mirror on the bedroom wall he saw the appellant shoot the deceased, walk over to where she lay, and heard him say, "I have done what I planned to do." Marvin testified that at this juncture his wife looked in from their apartment and the appellant said to her, "Don't touch her. I want her to die." Marvin testified to prior difficulties he had with the appellant over the appellant's mistreatment of the deceased.

Marvin's wife testified that she heard some shots, opened the door leading into the appellant's apartment, saw the deceased lying on the floor, and that the appellant said to her, "Don't touch her Bessie. I want her to die," and that she then ran out of the house and later saw the appellant come around

the house with a pistol in his hand, go to the neighbors' house and tell them "that he had put a stop to it all."

Officer Muckelroy testified that he arrived at the scene of the homicide within moments after he received the report and met the appellant, who volunteered the information, "I have killed the whole bunch"; that the appellant handed him a pistol containing three full and three empty shells; that he entered the house and found Marvin lying in a pool of blood; that he found no weapon other than the appellant's pistol; and that he carried Marvin and the deceased to the hospital in an ambulance.

Appellant, testifying in his own behalf, stated that he had been having trouble with Marvin for the past few years over his alleged mistreatments of the deceased and stated that both Marvin and the deceased had, during the course of their difficulties, threatened to kill him. He stated that on the day of the homicide Marvin had met him in the back yard upon his arrival at home and began to curse him; that he entered the house and Marvin followed; that he passed the deceased, who was in the kitchen holding a bread knife in her hand, and went into the bedroom; that Marvin came to the bedroom door with an open pocket knife in his hand and threatened to kill him; that he told Marvin to stop and then fired at him, intending to hit him in the shoulder; that the deceased, who still had the bread knife in her hand, threw up both her hands and said, "I will kill you, you s.o.b."; and that he remembered nothing further thereafter. He stated that he did not remember saying anything to the policeman who arrested him.

There was testimony that both Marvin and the appellant had threatened to kill each other and that the appellant, in a despondent mood, had threatened to kill the deceased and then kill himself.

This, we think, is a fair synopsis of this lengthy record and is sufficient evidence to support the jury's verdict.

Additional evidence will be discussed in connection with the appellant's bills of exception.

Formal Bill of Exception No. 1 and Informal Bill of Exception No. 2 relate to the testimony of defense witness Dr. Frey, a psychiatrist, who was asked a hypothetical question concerning symptoms of antagonism in an adult male toward his father coupled with extreme love toward his mother. From

neither bill are we able to learn what the witness would have answered if permitted to do so. In view of this, we are in no position to say that the trial court erred in refusing to permit the witness to answer the question. Article 759a, V.A.C.C.P., provides, in part, as follows:

"Where the defendant offers testimony which is rejected by the court, the judge, if requested by defense counsel. shall immediately retire the jury and hear such testimony to allow defendant to perfect his bill of exception."

Such was not done in the case before us, and nothing is presented for review. McGee v. State, 155 Texas Cr. R. 639, 238 S.W. 2d 707, and Clay v. State, 157 Texas Cr. Rep. 32, 246 S.W. 2d 180.

Formal Bill No. 2 and Informal Bill No. 3 reflect that the following transpired: The appellant was asked, "State whether or not, Mr. Brinkley, when you realized your son didn't love you as he did before, that gave you any feeling of depression or exhilaration?" The state's objection was sustained, and he was asked the further question, "State whether or not he'd hurt you when you realized your son didn't love you any more." Upon further objection, the jury were retired, and appellant's counsel stated to the court that it was his purpose to show that the relationship existing between the appellant and his son had brought about a condition of shock, which, in turn, created a mental block. The court inquired of counsel if this was an effort to prove that the accused was insane, and counsel answered that they were not attempting to prove insanity but were attempting to show that appellant's "condition was such at the time that he could have been subject to a minor block." The court replied that there had been no effort made to have the doctor explain what a block was, and the appellant was questioned no further.

Following this, a psychiatrist was called as a, witness and testified that a mental block was a condition in which a person sometimes unconsciously blocks out of his memory something that is unpleasant to him. He testified further that such a condition might arise from fear.

Because the appellant did not incorporate in the record the testimony which the court excluded from the jury, we are seriously handicapped. However, it does appear that the appellant got before the jury a psychiatric explanation of his inability to remember anything after he fired the first shot. We are unable

to see any possible injury resulting from his failure to get the answers to the questions hereinbefore set forth.

We find no error reflected by the bills.

Formal Bill No. 3 and Informal No. 4 relate to the cross-examination of appellant's daughter Mrs. Rice.

On direct examination, as witness for the appellant, Mrs. Rice testified that she had never heard of the appellant having mistreated the deceased. On cross-examination, she was shown a letter which she admitted having written to the appellant. She was then asked if in the letter she had called appellant's attention to the abuse that he had inflicted upon her mother, and she replied that she had. The letter was not introduced in evidence, and we think the cross-examination was proper.

Formal Bill No. 4 and Informal No. 5 relate to the interrogation of a state's rebuttal witness who had been a visitor in the home of the appellant and deceased some time prior to the homicide. He was then asked if he noticed the condition of the appellant at that time, and he replied that he had. He was then asked if he noticed the appearance of intoxication; whereupon, the appellant objected, and the court sustained the objection. No motion was made to instruct the jury to disregard the question.

The mere asking of a question such as this could not, under any decision of which we are aware, constitute reversible error.

Formal Bill No. 5 and Informal No. 6 relate to the testimony of Mr. Winfree, a former neighbor of appellant's and deceased's. He was asked if he had observed the conduct of the appellant toward the deceased. No grounds for an objection were stated, and the same was overruled.

It seems to be fundamental that under Article 1257a, V.A. P.C., the previous relationship between the accused and the deceased is admissible in a homicide prosecution. See Wheeler v. State, 156 Texas Cr. Rep. 140, 239 S.W. 2d 105.

Formal Bill No. 6 and Informal No. 7 relate to testimony of Marvin Brinkley concerning the location of the furniture in the appelllant's apartment. A police photographer had taken some pictures some time after the homicide. Marvin was asked

if the pictures correctly represented the location of the furniture on the day of the homicide. The grounds of the objection were that it called for a conclusion.

Marvin had been a daily visitor in appellant's apartment, was there on the day of the homicide, and would certainly be qualified to answer the question.

Formal Bill No. 7 and Informal No. 8 relate to an offer on the part of the appellant to submit proof that Marvin was suffering from an oedipus-complex. As stated in discussing an earlier bill, neither the bills nor the record reveal what the proof would have been. We are at a loss to appraise such a bill.

Formal Bill No. 8 alleges that the court erred in refusing to permit him to "offer evidence as to the character of Marvin Brinkley." The bill does not specify what witness was not permitted to testify to this point or where in the record we might find the rulings of the court about which he complains. Informal Bill of Exception No. 1, however, does direct our attention to page 294, where the court sustained an objection to a question about Marvin's reputation. Two pages later we find the same question propounded to the same witness, and she was permitted to answer that his reputation was good except when he was drinking and that he drank often. We also find that the witness Mrs. Rice was permitted to testify that she had known Marvin's reputation for being a peaceable and law-abiding citizen before he moved to Houston and that it had been bad. At least two other witnesses were asked if they knew Marvin's reputation in Houston, and they stated that they did not.

We have given this case careful consideration. No reversible error appears in the record, and we would not be authorized to set aside the verdict of the jury who heard the witnesses and passed upon their credibility.

One of appellant's attorneys, who did not participate in the trial but who did appear before this court in his behalf, has tendered for consideration a plat of appellant's apartment and the affidavit of a "missing witness." We are unable to consider either instrument. Our consideration and our review are limited to those matters which were heard in the court below.

The judgment of the trial court is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Judge.

It is urged that appellant was denied his constitutional rights in the admission of certain evidence offered by the state to which no objection was made at the trial, and it is pointed out that the trial judge at one time interrupted the state's attorney and held certain answers of a witness to be inadmissible, though no objection had been made.

We must hold that no reversible error is shown by the admission of evidence to which there is no objection, appellant being represented by counsel of his own choosing at the trial.

As we view the matter, appellant is entitled to no relief from this court because there is sufficient evidence to sustain the jury's verdict and no reversible error appears.

Some of the pleas presented on the motion for rehearing relate to fact issues which the jury has resolved against appellant, and others are of a nature appropriate for consideration by those charged with the responsibility of granting or refusing clemency.

The record suggests to us that the issue of insanity, temporary or permanent, might well have been raised. But neither appellant's counsel at the trial or his counsel on this appeal agrees. The latter takes the position that appellant's accusation that his wife had attempted to poison him was not an hallucination of appellant, but that the testimony as to such an accusation was conceived in the mind of appellant's son, the state's principal witness, Marvin Brinkley, and was either "his alcoholic hallucination" or a concocted "self protecting falsehood."

If the suggested issue of insanity can hereafter be supported by testimony, and affidavits in compliance with Art. 922 V.A. C.C.P. can be obtained, insanity after conviction as a bar to punishment would yet be available. Arts. 921, et seq, V.A.C.C.P.; McCune v. State, 156 Texas Cr. Rep. 207, 240 S.W. 2d 305; Klinedinst v. State, 159 Texas Cr. Rep. 510, 265 S.W. 2d 593.

The record would not authorize this court to do other than agree with the position of his counsel that appellant was not insane at the time of the trial, and to agree with the finding of the jury as to his guilt and punishment.

Appellant's motion for rehearing is overruled.