ALLEN MURRAY v. THE STATE.

No. 22854.  Delivered May 10, 1944.
Rehearing Denied October 11, 1944.

The opinion states the case.

*T. B. Davis*, of Denton, for appellant.

*Earl L. Coleman*, County Attorney, of Denton, and *Ernest S. Goens*, State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with rape by force, threats and fraud on the person of a young girl seventeen years of age, and given a death sentence by the jury.

The injured young lady and her sweetheart were together in a car on a road near Denton, Texas, in the early afternoon of November 28, 1943, and while listening to the radio were approached by appellant, who requested the gift of a cigarette, and upon being told that they had no cigarettes, the appellant left them, but soon returned, and, after exhibiting a pistol as well as a knife, demanded the young gentleman's billfold, which was given to him; he ordered the couple to get out of the car and over into some woods near by, still holding the knife, and the pistol on them. While going to the woods he kept jabbing the young man in the back with the knife, and also stabbed him twice on the arm. Appellant then began to talk about the difference between the white and the colored races, and evidenced that he intended to have intercourse with the white young lady, at which time the young man struck appellant, and appellant stabbed him repeatedly with the knife, and there began a struggle over the knife, the young man being cut severely therewith many times, and it soon became lost in the struggle. Eventually the girl became possessed of the pistol, and tried to shoot appellant but did not understand its peculiar mechanism, and failed to shoot it; the young man finally got the pistol however, and fired one shot from it but hit nothing, and he soon became unconscious from his wounds. Appellant then grasped the young lady, struck her in the face with the gun, knocked her down, took her clothes off, and achieved his purpose of raping her, despite her vigorous resistance. He then threatened to kill her if she told, and ordered her to keep her head down for an hour. She did not do so, but did keep her head down some few minutes, and upon raising her head, she was again ordered to keep it down for an hour, this whole transaction lasting from 3 o'clock until about sundown. Appellant then left the scene, and was afterwards apprehended after having exhibited his knife and pistol in an endeavor to escape from his captors. There can be no doubt of this man's guilt.

This offense was alleged to have taken place on November 28, 1943. On December 8, 1943, the grand jury of Denton County

returned the indictment herein, and same was then filed in the district court of that county. On the 11th day of December, 1943, appellant was brought into open court for the purpose of being arraigned, and upon it being shown that he had no counsel, and was too poor to employ same, T. B. Davis, a practicing attorney of that court, was appointed to defend appellant in such cause; at which time appellant was arraigned, and being asked relative to his guilt in this cause, he answered that he was guilty as charged in the indictment. He was then admonished by the court, as required by law, and it appearing that he was sane, and uninfluenced in making such plea by fear, or any delusive hope of pardon prompting him to make such plea, the same was received by the court, and this cause was then set for December 16, 1943, at which time a jury was impaneled and sworn, and testimony was taken. After the State had rested its case, and during the night of December 16, 1943, appellant's attorney learned for the first time that appellant had been adjudged to be a lunatic on July 15, 1943, and had on July 27, 1943, escaped from the lunatic asylum for colored people at Taft, Oklahoma. After such fact was communicated to the trial court, the judge thereof withdrew appellant's plea of guilty and entered for him a plea of not guilty, and the trial proceeded thereunder. The case was reopened and the State then assumed the burden of showing the present sanity of appellant, and was charged with such in the court's charge, and further witnesses were examined relative to appellant's conduct after the commission of the offense alleged herein.

There are no bills of exceptions in the record, but we do find a motion to allow appellant to withdraw his announcement of ready, and postpone this cause to some future day of the court term because of the fact that appellant's attorney had only learned of appellant's conviction for insanity after the State had rested its case, such knowledge having finally come to the attorney about 11 o'clock P. M. on December 16, 1943. We note, however, that the affidavit appended to such motion was sworn to and filed on December 18, 1943, the jury having returned its verdict on December 17th, or the day before the motion was filed. We also notice that this motion was merely filed, and there does not appear in the record any evidence that same was presented to the court, nor that he ever made any ruling thereon. It also does not appear that any exception was taken to any ruling or procedure thereunder. The motion itself is not in proper form as is required by Art. 543, C. C. P. But be that as it may, we early held in the case of Nelson v. State, 1 Tex. App. 44, that:

"The former decisions of our courts, from the earliest days down to the present, make the saving of a bill of exceptions a prerequisite and sine qua non to revisory action by the appellate court," citing many early cases.

In the case of O'Leary v. State, 13 S. W. (2d) 860, our present Presiding Judge said:

"A serious question might be presented if complaint at the denial of postponement had been brought forward by bill of exception, but none is found in the record. It has been the long and consistent holding of this court that the action of the lower court in refusing a postponement or continuance would not be reviewed, unless brought forward by bill of exception, and that it is not sufficient to complain of such action in the motion for new trial. The reasons for this holding appear in many cases dealing with the subject and it is not necessary to again elaborate. Many cases are collated under section 304, Branch's Ann. Tex. P. C., beginning with Nelson v. State, 1 Tex. App. 41. Recent cases are Turner v. State, 109 Tex. Cr. R. 301, 4 S. W. (2d) 58; Miller v. State, 93 Tex. Cr. R. 163, 246 S. W. 87."

We said in the case of Stovall v. State, 16 S. W. (2d) 242:

"There was an application for continuance, but no bill of exceptions was taken to its refusal, in which event we are compelled to hold that the action of the court must be deemed satisfactory to appellant."

Also see Texas Digest, Vol. 13, p. 459, Key No. 1090, and many cases there cited, all holding that a bill of exceptions is a necessary requisite to a motion for a continuance before a refusal thereof will be reviewed by this court.

The State assumed the burden of proving appellant's present sanity, and offered witnesses relative thereto. The facts themselves evidenced an enforced association between the two injured parties and appellant over a period of hours, appellant's greed being evidenced as well as his lust towards the young lady; his fear of detection and effort to escape evidencing his fear of punishment for the deeds committed doubtless had some weight with the jury as to their finding relative to his knowledge of right and wrong, and the consequences of his act. They were instructed, in substance, to acquit appellant unless they found him sane, the burden of showing his sanity being upon the State. We cannot say that the jury was mistaken in their conclusion in the light of the evidence. The motive in his actions seems to sug-

gest that of lust for the person of this young girl, and a knowledge of the serious consequences following the gratification of such lust, evidently possessed of a knowledge that he was committing a wrong.

We see no error evidenced in the record, and the judgment is affirmed.

ON MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that the evidence is insufficient, as a matter of law, to overturn the presumption of insanity attaching by reason of the Oklahoma judgment, and that we erred in reaching a contrary conclusion.

Attention is called to the fact that the undisputed evidence shows:

(a) That appellant, by force, brutally raped the prosecutrix, and assaulted, by inflicting serious injuries with a knife, her young male companion;

(b) That, while fleeing from the scene of the crime, and in attempting to make his escape, appellant was accosted by two farmers, who succeeded in taking him into custody, and who he attempted to kill;

(c) That, about four and one-half months prior to the commission of the crime, appellant was adjudged to be a lunatic and a person of unsound mind by a court of competent jurisdiction in the State of Oklahoma;

(d) That, as a result that adjudication, appellant was placed in a lunatic asylum of that State;

(e) That, twelve days thereafter, he escaped from that asylum and fled into this State, where he committed the crime for which he here stands convicted.

The Oklahoma judgment of insanity being valid, it is, under the full faith and credit provision of our Federal Constitution (Art. 4, Sec. 1), binding upon the courts of this State.

Regardless of the rule in other jurisdictions, it is now the settled law of this State, governing in the trial of criminal cases, that, when the insanity of an accused has once been shown to exist, as by judgment of the court, the presumption is that

insanity continues, and the burden is upon the State to prove beyond a reasonable doubt that the accused had regained his sanity at the time of the commission of the offense charged. Davidson v. State, 109 Tex. Cr. R. 251, 4 S. W. (2d) 74; Glover v. State, 125 Tex. Cr. R. 605, 69 S. W. (2d) 136; Kizer v. State, 130 Tex. Cr. R. 185, 92 S. W. (2d) 439; Herring v. State, 141 Tex. Cr. R. 281, 148 S. W. (2d) 416; Irons v. State, 142 Tex. Cr. R. 227, 152 S. W. (2d) 359; Gunter v. State, 139 Tex. Cr. R. 145, 139 S. W. (2d) 116.

In the instant case, the trial court, recognizing the law to be as stated, instructed the jury in accordance therewith and to the effect that, before a conviction would be authorized, it was required to find, from the testimony, beyond a reasonable doubt, that, at the time of the commission of the offense charged, appellant was sane and possessed sufficient mentality to know the nature and consequences of his act and the right and wrong of what he was doing.

The question thus presented for our determination is not without difficulty. On the one hand, the undisputed facts show appellant to be guilty of the crime of rape by assault, made in such a manner and under such circumstances as warranted the jury in assessing, as it did, the death penalty. On the other hand, if appellant was insane at the time he committed that crime, he cannot be punished therefor, because, regardless of the crime committed, "No act done in a state of insanity can be punished as an offense." (Art. 34, P. C.).

To overturn the presumption of insanity and to show that appellant was sane, the State relied upon the following testimony:

Dr. Hutcheson, the County Health Officer of Denton County, visited appellant in jail on two separate occasions, with a view of ascertaining his mental condition, and, after talking with and observing him and his acts and conduct, expressed the opinion that he was sane and was not a person of unsound mind at the time he was so adjudicated in the State of Oklahoma. Upon cross-examination, the doctor testified that it was his opinion that, if appellant was insane at the time he was so adjudicated in Oklahoma, he would not have recovered his sanity by the time he committed the offense charged, or at the time of trial. The effect of the doctor's testimony was not only to show that appellant was sane but also was an impeachment of the Oklahoma judgment. Dr. Hutcheson was the only witness the State

used as an expert; the other witnesses were non-expert, and consisted of two farmers whom appellant attacked by attempting to shoot them, after the rape, while he was attempting to escape, and who arrested him and delivered him into the custody of the officers, the sheriff of the county, a deputy sheriff, and a captain of the Texas Rangers. These non-expert witnesses expressed the opinion that, from their observation of appellant while under arrest and in custody, he was of sound mind. Such non-expert witnesses detailed no specific facts, conversation, acts, or conduct on the part of appellant upon which, and as a result of which, they based their opinion. The appellant offered no testimony, but relied upon the presumption of insanity mentioned.

If we correctly comprehend appellant's position, it is that the facts are insufficient to overcome the presumption of insanity, and that the doctor's testimony being only an impeachment of the Oklahoma judgment of insanity, it established no fact, for, under the rule or law stated, the adjudication in the State of Oklahoma was final and irrefutable and the only way the State could overcome the effect of the Oklahoma judgment was to show a recovery by appellant of his sanity since that time and prior to, or at the time of, the commission of the crime. Appellant takes the further position that the testimony of the non-expert witnesses is insufficient to overcome the presumption of insanity because such testimony constituted expressions of opinion only by the witnesses, without first stating the facts as a predicate for and upon which the conclusion was arrived at. In this connection, and in support of his contention, appellant takes the position that it has always been the rule in this State that non-expert witnesses are allowed to express the opinion that a person was of unsound mind after first acquainting the jury with the facts upon which the opinion is expressed, and that the same rule should be applied to non-expert witnesses testifying to the sanity of an accused who has been adjudged to be an insane person; in other words, that, if non-expert witnesses are required to state the facts upon which they base the opinion that a person is insane in order to overcome the presumption of sanity, the same rule should be applied to witnesses testifying to the sanity of an adjudicated lunatic, in order to overcome the presumption of insanity of such persons. Appellant insists that, when such rule is here applied, the State's testimony is insufficient because the non-expert witnesses testifying to his present sanity stated no facts, circumstances, acts, or conduct on the part of appellant which caused them to believe that he had regained his sanity.

No objection was reserved to the admission of the testimony of the non-expert witnesses; hence the only question before us is the probative force of the testimony. The weight to be given to the testimony is always the province of the jury and is never for this court. As is said in 18 Tex. Jur., page 464, Sec. 343: "The decisions emphasize that the insanity of the defendant is peculiarly a question for the jury, and their finding against the accused * * * * * is generally conclusive." In this connection, note should be taken of the fact that it is the abnormal acts and conduct on the part of an individual that lead to the conclusion that he is of unsound mind, while, on the contrary, so long as one appears, acts, and conducts himself as a normal person, there is nothing to detail or to point out upon what basis an opinion of sanity of that person can be expressed.

The non-expert witnesses having been permitted to express the opinion that the appellant was of sound mind—based upon their observation of him immediately after the commission of the crime by him—this court would not be authorized to say that the jury was unwarranted in accepting such testimony. It follows, then, that the facts upon the question of appellant's mental condition at the time of the crime were sufficient as a matter of law to authorize the jury's conclusion against him, and the motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.