J. W. MORROW JR., v. STATE.

No. 24419. June 22, 1949.
Rehearing Denied November 23, 1949.

_Coleman Cline, Marvin Beaty,_ and _Otis Rogers_ (on appeal only) all of Fort Worth, for appellant.

_A. C. Winborn,_ Criminal District Attorney, and _E. T. Branch,_ Assistant Criminal District Attorney, Houston, and _Ernest S. Goens_, State's Attorney, Austin, for the state.

GRAVES, Judge.

Appellant was charged with the murder with malice of T. E. Shofner, and upon his conviction he was given the death penalty, and he appeals.

Mrs. T. E. Shofner, wife of the deceased, was an employee of the Southern Pacific Railroad as a telegrapher-clerk. Her office was out on South Main Street in Houston, Texas, and her hours of work were from 6:00 p. m. until 2:00 o'clock a. m., at which last hour she was relieved by her father. This office was located in a sparsely settled portion of the city. Her husband (the defendant) was a deputy sheriff of Harris County, and on the day of this tragedy, he had purchased a new automobile. He had driven up to this office and was waiting for his wife's father to relieve her, and they intended to go to their home. While waiting, he and his wife were sitting at a table playing cards to pass the time away. Her husband had his coat off and his pistol was in its holster. There was another gun in the office that she kept there for her protection, the nearest house being about a quarter of a mile away. While they were waiting for her father, a man came up to the door of the office. The deceased saw him and said, "All right, pardner, what can I do for you?" The man said, "Give me your keys," and then two shots were fired rapidly. They came from where this man stood. The husband did not have time to rise from his chair but fell over with two bullets in his brain. About three seconds later a third shot was heard from the outside, whereupon the wife also fell to the floor but was not hit. She soon went over and lifted her husband's head, and he said, "Honey, the man had one eye," and some words of endearment. About this time, she heard her father coming and saw this man knock her father off a little bridge near the office. She then got her gun and shot at him, but did not hit him. Help soon arrived, and after two or three hours of search, appellant was captured and taken into custody.

Appellant was a trusty on the Blue Ridge State Farm, he having been convicted of numerous offenses, and was an inmate of the prison system. He seemed to have been in charge of the projection of moving pictures on such farm. He broke into the armory at such farm and possessed himself of two pistols, a rifle, and a quantity of ammunition. He then fled toward Houston, coming to this secluded office in the early morning, doubtless desiring to possess himself of an automobile. Upon finding Mr. Shofner in possession of such keys, he shot him twice, either wound being fatal, and from which Mr. Shofner died that morning.

It was shown that appellant had been convicted of lunacy in Fort Worth, Texas, in the Tarrant County Court on September 25, 1940. Appellant was a man 28 years old, and at the time of such lunacy conviction, he had pending certain charges rela-

tive to alleged criminal actions. He remained several months in the Wichita Falls State Hospital and was discharged therefrom. Soon thereafter, he was convicted of an offense in Tarrant County, Texas, and after remaining in the state prison for awhile, he was paroled. He next appeared in the State of Michigan and in the prison of that state, and then, later, is found in the Texas prison as a trusty under conviction in this state.

There is but one defense offered herein and that relates to the question of his sanity at the time of this homicide. Much testimony was offered relative to appellant's life history. It appears that at the age of eight years he lost an eye; that some ten 'years thereafter he had a collision between his bicycle and a car and received some head injuries. Many of his friends and family testified that prior to such injuries he was a brilliant and obedient boy, but, thereafter, he began to be sullen and morose; that he fancied that he was being persecuted and that people were after him and pursuing him in an endeavor to do him harm; that his witnesses believed him to be insane.

The state countered with testimony of lay, as well as expert, witnesses whose testimony indicated him to be a sane person with a knowledge of the right and wrong of the act committed and the probable consequences thereof.

The trial court told the jury in his charge that before they could convict appellant in this cause, the state had the burden of proving to their satisfaction that appellant was sane at the time of the commission of this alleged offense, and unless they so believed him sane at such time beyond a reasonable doubt, they should acquit him on the ground of insanity. The jury answered that appellant was sane at the time of the homicide and that he was sane at the time of the trial.

Bill of Exception No. 1 is based upon the fact that an employee of the Texas state prison system was allowed, over objection, to testify that he first knew appellant in 1941, when the witness was connected with the warden's office in Huntsville. The burden of the objection was that such testimony showed only that appellant was a state convict in that year, and that appellant's reputation had not been put in issue by his attorneys. The record is replete with no less than six unobjected to references to appellant's waywardness, not only in the Texas courts, but also in that of another state, and his different confinements thereunder. This bill is overruled.

Bill No. 2 relates to the introduction of a written statement allegedly made by appellant before an investigator for the district attorney's office in Houston setting forth in detail the circumstances of this homicide. This statement seems to have been made about 6:00 o'clock in the morning of the homicide soon after the pursuit and capture of appellant. The main objection thereto being that the warning embodied in the statement was given to appellant by F. H. Walsh, who was not a district or county attorney but was a mere investigator for the district attorney. Article 727, Vernon's Ann. C. C. P., does not require that the warning therein set forth should be given by any certain person or officer; it does require, however, that the statement should show that the same was made to the person thus giving the warning.

In Bill of Exceptions No. 3 complaint is made of the testimony of Dr. L. McKechney, the Superintendent of the Wichita Falls Hospital, who was custodian and keeper of the official records of that institution, and he had present in court the records of appellant in such institution. These records showed date of conviction, Sept. 25, 1940, received in such institution on Oct. 22, 1940, and order of release therefrom on March 30, 1941. This last order was objected to as hearsay, the witness not being connected with such hospital on the date of appellant's release therefrom. It is shown by the record that many times therein it was testified to that appellant was released from such hospital, and testimony appears in the record that appellant told witnesses that he was sent to the hospital to keep him from being sent to the penitentiary under several indictments then pending and that he was not insane at the time. The only objection to such discharge seems to be that contained therein is the statement: "Discharged without psychosis," and the experts said that "without psychosis" meant that appellant had recovered his sanity. We think such record was admissible. See 18 Tex. Jur. p. 404, sec. 278; McCoy v. State, 106 Tex. Cr. R. 593, 294 S. W. 573; McCormick & Ray on Texas Law of Evidence, p. 732, sec. 577.

Bill No. 4 shows that the last above-named witness was asked relative to how a discharge from such hospital was obtained and he answered that "the staff of psychiatrists passed on his sanity." This matter was objected to as being hearsay. This discharge was testified to by many witnesses on both sides without objection thereto. That appellant was sent to this hospital as an insane person and was thereafter discharged therefrom, that he was subject to spells, and would be normal for quite

awhile, and then again lapse into an insane condition seemed to have been the burden of the testimony of appellant's witneesses, and we see no error in allowing this superintendent of appellant's home hospital from testifying relative to how this discharge from the hospital was made. An array of witnesses testified to the fact of the discharge. This bill only shows that upon an offering of this testimony, appellant merely said, "We object to that as being hearsay," after the question had been asked and the answer made thereto. No motion was made to strike out either the question or its answer. It is also shown that appellant's own psychiatrist witness, Dr. Grice, testified to practically the same thing as that objected to herein, and no objection was directed thereto. The bill is overruled.

Bill No. 6 relates to Dr. C. A. Dwyer, a state's witness, being allowed to testify that he was in the service of the army at the time of the Japanese attack upon the Philippines; that he was captured by the Japanese and confined for three years in Bilibid Prison. This witness further testified that while such prisoner, he treated many fellow prisoners for mental diseases, as well as much other experience he had in treating such mental diseases. We think this testimony was admissible in determining the qualifications of this expert on insanity.

Bill No. 7 excepts to the trial court's charge on the burden of proof relative to appellant's only defense herein, namely, that of insanity. The careful trial court placed the burden of proof upon the state to show beyond a reasonable doubt not only that appellant was sane at the time of the alleged offense, but also at the time of the trial, on account of the fact that he had been found insane in the Tarrant County Court on Sept. 25, 1940. We think such instruction was a correct proposition of law. See Gunter v. State, 139 Tex. Cr. R. 145, 139 S. W. (2d) 116; Herring v. State, 141 Tex. Cr. R. 281, 148 S. W. (2d) 416.

We see no error shown in the record, and the judgment will therefore he affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In his motion for rehearing appellant first discusses the opinion of this court dealing with his Bills of Exception Numbers 3 and 4. He says his objections did not go to the fact of appellant's release from such hospital, but to the language in the "purported" order of release containing the statement "* * *

discharged without psychosis" and to the further fact that the witness was permitted to testify that "The staff of psychiatrists passed on his sanity." We have analyzed these bills thoroughly and cannot give to the objection the effect contended for in the motion. We must consider the bills as we find them in the record. The objection was to the evidence produced by the witness who was in charge of the public records. The objection singled out no part of the record, but was to its admission solely on the ground that the witness was not in the hospital at the time the record was made, had no personal knowledge of the things contained therein, and that such evidence is, therefore, hearsay.

Dr. Grice, at page 36 of the statement of facts, gave the same testimony without objection. Under a well established rule, the admission of the evidence was not error requiring a reversal of the case. The questions raised by Bills No. 3 and 4 were properly discussed in the original opinion.

The most serious complaint made by appellant, in his motion for rehearing, is lodged against the court's holding on his Bill of Exception No. 7. This is raised also by the concluding paragraph of appellant's objections and exceptions to the court's charge. He contends that the charge did not instruct the jury that the burden was upon the state to show the sanity of the accused at the time of the trial. The opinion disposed of this by saying: "The careful trial court placed the burden of proof upon the State to show beyond a reasonable doubt not only that appellant was sane at the time of the alleged offense, but also at the time of the trial." It is asserted, with emphasis, again and again that the charge does not so state; that it only charges the jury on the burden of proof beyond a reasonable doubt as to his sanity at the time of the commission of the offense, *and not at the time of the trial.*

This contention has required our most careful consideration and it is our conclusion that the above quoted statement from the original opinion was justified. In determining the effect of the charge, we look always to the entire instrument. We notice, from paragraph five of the court's charge, that he charged specifically the law in the case before him that the burden was upon the state. He further told them that "No act done in the state of insanity can be punished as an offense." He told them that the judgment of the county court of Tarrant County, read in evidence, "* * * conclusively establishes that the defendant was insane at the times covered by that judgment, but the judgment is not conclusive as to his subsequent condition of

mind." He then tells them that where insanity has been once shown to exist by a judgment of court, "it is presumed to continue"; that the burden was upon the state to show sanity at the time of the homicide. He then submits specific issues for the jury to find and answer before they return their verdict in the case. One was as to the sanity at the time of the commission of the offense, and the other at the time of trial. The jury found him sane at both specified times. As regards these two issues, he told them that these were questions of fact "* * * controlled, so far as the law is concerned, by the instructions given you in this charge." Recalling then that the charge specifically instructs them as to the burden on the state to show beyond a reasonable doubt the facts constituting the offense, we think that this charge relates to and sufficiently presents both of the foregoing questions to the jury, with an understanding that it was the burden of the state to show sanity at each time. It is true that he added to this additional instruction on the proof required to show he was sane at the time of the homicide. It would have been more forceful, probably, and it is certainly recommended that in such cases he give the same or similar instructions as to the burden of proof at the time of the trial, but we do not hold it to be necessary. It would only have prevented a question of law being raised on the charge, on appeal.

We are mindful, too, that there is a distinguishment to be made between the force and effect of the issue of insanity at the time of the commission of the offense and at the time of trial. If one is insane at the time of the commission of the offense he should not be prosecuted. The finding on that relieves the accused from further prosecution for all time. It becomes an important issue in the case. An issue of insanity raised only for the time of trial is a matter of procedure. It will only have the effect of postponing the trial until such time as the accused is in a mental condition which would enable him to confer with his attorney, to understand the procedure in which he is involved, and to rationally express himself as a witness in his own defense, if he chooses to do so, and to otherwise exercise judgment either independently or in co-operation with his counsel in all matters relating to his trial. It cannot be given that importance which the issue of insanity has as related to the time of the commission of the offense. It is difficult to deal with this distinguishment and the trial court should not do so if it may be avoided. Always this may be done by giving a specific charge, in like or similar manner, in both instances. Appellant made no contention at the time of the trial that he could not assist his attorney in the trial. The present appeal does not emphasize

such a plea. The issue is raised incidentally. It would likely have attracted more attention under different procedure. If the party on trial is defeated in his rights to show insanity at the time of the homicide there is no cure for this in the future. As to the issue at time of trial it is different.

We think the court's general charge on the subject of burden of proof will apply to the special issue. No. 2, the same as to any other issue of fact in the case, and that the statement in the original opinion complained of is warranted by the record. See Young v. State, 120 Texas Crim. Rep. 489, 46 S. W. 2d 991, opinion by Judge Hawkins on state's motion for rehearing.

Appellant's motion for rehearing is overruled.