**Ex parte Cicero TUTTLE.**

**No. 41518.**

Court of Criminal Appeals of Texas.

July 9, 1969.

Rehearing Denied Oct. 22, 1969.

Jack Kaufman, San Antonio, for appellant.

James E. Barlow, Dist. Atty., Sparta Bitsis, Asst. Dist. Atty., San Antonio, Crawford Martin, Atty. Gen., Nola White, A. J. Carubbi, Jr., Robert C. Flowers and

Monroe Clayton, Asst. Attys. Gen., and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

This is a habeas corpus proceeding by an inmate of the Texas Department of Corrections attacking the validity of the life sentence under which he is confined.

The life term was assessed by a jury in Cause No. 44,314 in Criminal District Court (now the 144th District Court) of Bexar County, Texas, on July 6, 1942.

The indictment in said cause returned April 28, 1938, alleged that on or about April 23, 1938, appellant unlawfully, voluntarily and with his malice aforethought, killed William A. Sullivan by striking, beating and bruising him with a bottle.[1]

The judgment of conviction recites that "*after due inquiry*, it plainly appearing to the Court that the defendant is sane and uninfluenced by any consideration of fear, by any persuasion or delusive hope of pardon prompting him to confess his guilt in making said plea of guilty, the said plea of guilty was received by the Court and entered of record upon the minutes."

Arts. 501 and 502 C.C.P. (1925) in effect at the time of the trial, which relate to arraignment of the defendant, provided:

"If the defendant plead guilty, he shall be admonished by the court of the consequences; and no such plea shall be received unless it plainly appear that he is sane, and is uninfluenced by any consideration of fear, by any persuasion or delusive hope of pardon prompting him to confess his guilt."

"Where a defendant in a case of felony persists in pleading guilty, if the punishment is not absolutely fixed by law, a jury shall be impaneled to assess the punishment, and evidence submitted to enable them to decide thereupon."

The judgment reflects that the trial judge (W. W. McCrory) complied with these statutes and, in addition, reflects that the judge found the defendant sane "after due inquiry."

The habeas corpus proceeding in which the able and conscientious District Judge, A. A. Semaan, presiding in the 144th District Court, appointed counsel to represent the applicant, conducted an extended hearing at which psychiatrists were called as the court's witnesses, and made his findings and conclusions which are now before this court, was instituted by petition supported only by applicant's affidavit that the allegations were true to the best of his knowledge and belief.

Art. 11.07 Vernon's Ann.C.C.P., in effect at the time the petition was filed, provides that the petition contain sworn allegation of facts which if true would render petitioner's confinement under the felony conviction illegal, and provides that the attorney representing the state in the convicting court and the Attorney General of Texas be afforded an opportunity to answer such sworn allegations.

Art. 11.07, supra, also provides that "after conviction, the procedure outlined in this Act shall be exclusive and any other proceeding shall be void and of no force and effect in discharging the prisoner."

The 1942 conviction is attacked in this habeas corpus proceeding on the ground that the applicant was denied due process of law.

---

1. The booking card of the San Antonio Police Department dated April 25, 1938, reflects that appellant lured the 4 year old William Sullivan into the brush where he attempted to commit sodomy on him, then beat him unconscious with a quart wine bottle. The boy died in Base Hospital, Ft. Sam Houston, at 8:45 A.M. on April 25, 1938.

The general rule is that the petitioner has the burden of proving by a preponderance of the evidence that there has been a violation of his constitutional rights. Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167.

One of the allegations of the petitioner was that "because of his indigency he was deprived of the assistance of counsel and a speedy trial."

In support of this ground the petitioner alleges "That after 4½ years confinement in jail he was brought before the court at which time he was appointed counsel to stand beside him and enter a plea of guilty, upon which he was sentenced in the year 1942."

■ The facts are that petitioner was represented by Hon. James Perry of the San Antonio Bar, who was employed to represent him and did represent him at the trial and from a date prior to January 1, 1939. As late as August 16, 1946, Mr. Perry was seeking clemency for him in the form of parole.[2]

Hon. W. W. McCrory, who presided at petitioner's trial, noted his concurrence in the opinion and action of the Board of Pardons by writing on the copy he received: "You are perfectly correct as to this person." Judge McCrory had previously, on May 3, 1944, written a letter to the Board in which he stated:

"This fellow, in my opinion, is a moral degenerate and was kept in jail here for quite a while for the reason that we could hardly decide whether he was insane or not. He beat a small child to death with a bottle out here in the brush, a ghastly kind of a murder, and finally his lawyer pleaded him guilty and it was

decided that he was legally sane. He is of a low grade intellect and of a moronic type, and if he is worth anything to the state it is more than he would be worth on the outside to society. In fact I think he would be dangerous on the outside. It is possible that he could be adjudged insane and put in the asylum, and if he is insane he certainly is a criminal type."

Judge McCrory, who presided at the trial, defense counsel James Perry, M. D. (Buck) Jones, the Assistant District Attorney who handled the trial for the state in 1942, and Ed Moffitt, the court reporter, all had died before the conviction was attacked by habeas corpus. The shorthand notes of the court reporter could not be found and no living witness to the 1942 trial could be found (other than Hon. Archie S. Brown, then Assistant Criminal District Attorney and presently judge of the 144th District Court, and Sgt. Newman, neither of whom could furnish testimony as to what evidence was heard at the trial or upon arraignment).

Another ground alleged as denial of due process was that the prosecution suppressed evidence vital to the court and defense.

The evidence claimed to have been suppressed was a letter dated May 6, 1938, addressed to the Criminal District Attorney and signed by County Health Officer T. N. Goodson, M.D., and practicing psychiatrist W. J. Johnson, M.D., who was Superintendent of the San Antonio Hospital, which read:

"Dear Mr. Shook:

"As per your request, we have this day examined Cicero Tuttle, who is con-

2. Parole was denied by letter from the Board of Pardons and Paroles dated April 21, 1946, advising Mr. Perry "we have investigated the case of this subject regarding whom you wrote and find that he committed a very atrocious crime. It is our opinion that the subject is a psychopathic case and is a problem for the Texas Penitentiary System. We have marked the case definitely denied and suggest that if there is any further action you desire to take at this time, or any future time, it would be necessary for you to apply to the courts regarding the sanity of the defendant."

fined in the Bexar County Jail. In our opinion, this man is so definitely feeble minded that he does not have sufficient mental capacity to choose between right and wrong nor to appreciate the nature and quality of his acts."

■ Judge Semaan did not find and the record does not contain proof to sustain the allegation that the letter was suppressed, knowingly or otherwise.

The remaining grounds upon which denial of due process of law was claimed were "that at the time of the commission of the crime, when his confession was taken, and at the time of the trial, the petitioner was so definitely feeble minded as to be legally insane, which fact was known by the District Attorney at the time of trial." [3]

■ When the confession is not used, insanity at the time it is taken is not ground for collaterally attacking a conviction.

As to the allegations that at the time of the commission of the offense (April 23, 1938) and at the time of the trial (April 1942) petitioner was so definitely feeble minded as to be legally insane, the rule regarding the attack upon a judgment of conviction based upon insanity or mental incompetency to stand trial appears to be:

■ The judgment of conviction cannot be attack collaterally on the ground that the defendant was insane at the time the offense was committed, this being a defense which must be raised at the time of trial.

■ Mental incompetency (or insanity) at the time of trial, though a defensive issue, *is a* ground upon which a final judgment of conviction may be attacked upon proper petition unless the facts accompanying the allegation conclusively show that petitioner is entitled to no relief, in which event the petition must be dismissed. However, should the facts accompanying the application show otherwise, the respondent may not defeat the allegations of the petition by urging that there was a waiver of the issue by the petitioner in the trial court and one or more hearings are required.

■ The first issue to be decided at the hearing is whether petitioner's competency to stand trial was determined by the court at or about the time of said trial.

■ Should the court find that there had been no determination of the competency issue, and the allegation of incompetency is supported by facts which do not show that the petitioner is entitled to no relief, notwithstanding the court's finding to the contrary, the state should be given an opportunity to demonstrate that the competency issue was put in evidence, either before the trial, during the trial or otherwise, and that a determination was made thereon.

■ Should the state fail to demonstrate that the competency issue was so determined, the next question for the court hearing the petition is whether it can conduct an adequate hearing on the question of the petitioner's competency at the time of his trial.

If the court concludes that the issue of competency of the defendant to stand trial was not determined at the time of his trial and that it is unable to make an adequate determination thereof, it must set aside the conviction and order a new trial.

---

3. Judge Semaan construed the petition as raising also the point that petitioner was mentally incompetent to enter a plea of guilty or to waive any right and the point that petitioner was denied the effective aid of counsel before and during the trial.

Having conducted an extensive hearing, Judge Semaan made and filed findings and conclusions favorable to the petitioner and ordered that he be returned to the custody of the Texas Department of Corrections there to await the final orders of this court.

However, if the court hearing the habeas corpus petition, after hearing on such issue, determines that petitioner's competency at the time of his trial may be adequately resolved, there would follow a hearing to determine whether or not the petitioner was in fact competent at the time he was tried. See Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; Clark v. Beto, 359 F.2d 554 (5th Cir.); Lee v. Alabama, 386 F.2d 97 (5th Cir.); Sharp v. Beto, D.C., 276 F.Supp. 871, and 282 F.Supp. 558.

■ Sharp v. Beto, 282 F.Supp. 558, supra, holds that in view of Art. 46.02 C.C.P. (1965) as amended by Acts of the 60th Legislature, p. 1748, in 1967, this issue should be determined by a jury in the court in which the petitioner was tried.[4]

■ It is significant to note that in each of the Federal Court cases from which the foregoing procedure was fashioned there was a prior adjudication that the petitioner was insane, which shifted the burden of proof on the issue of sanity at the time of trial to the state.

Whether petitioner is feeble minded (or mentally retarded), a sociopath or psychopath (sometimes referred to as "the rejected orphan of the law and psychiatry"), free of psychosis and legally classed as sane and competent, or was and is and will be throughout his life so definitely feeble minded as to be legally insane and mentally incompetent to stand trial or to be held accountable for any criminal misconduct, he is, as stated by the Chairman of the Board of Pardons in 1946, "a psychopathic case and is a problem for the Texas Penitentiary System" (now Texas Department of Corrections); is not eligible for parole and for his own welfare and for the protection of others requires the type of custodial care available at the Wynne Treatment Center with the assurance provided by the laws governing the Board of Pardons and Paroles (Art. 42.12(15) C.C.P.) and by Arts. 5547–69 V.A.C.S. relating to persons committed to State Hospitals under the provisions of the Code of Criminal Procedure, Art. 46.01(4) C.C.P.

■ In a habeas corpus proceeding instituted under Art. 11.07, supra, the respondent, the District Attorney, and the Attorney General are entitled to have sworn allegations which they may answer. This is especially true where, as here, the applicant has the burden of proving false the recitations of a judgment of conviction which he attacks on the ground that he was denied a federal right such as due process of law.

■ The record reflects that no hearing was ever requested as required by Art. 932a V.A.C.C.P., in effect at the time of

4. Having concluded that Sharp had been denied a hearing on his mental competency to stand trial in state court in 1964, and upon further hearing having concluded that such issue might be adequately resolved, order was entered in the United States District Court for the Northern District of Texas which reads: "The 64th Judicial District Court, Lamb County, Texas, will be directed to conduct a hearing within 30 days, pursuant to state law, to determine petitioner's mental competency to stand trial in February, 1964, following which the State Court will be directed to certify to this Court the verdict of the jury."
While a Judge of a Federal Court has authority and sometimes the duty to set aside an order or judgment of conviction entered by a State Court Judge, we think it is clear that he is without authority to direct a State Court Judge to conduct a hearing or to perform any other act in his capacity as a State Court Judge, and certainly is without authority to order a State Court Judge, to conduct a jury trial for the purpose of obtaining a verdict to be certified to the Federal Court.
Be this as it may, Hon. Pat Boone, Jr., Judge of the District Court of Lamb County, where Sharp was convicted, complied with the order, conducted the jury trial and certified to the United States District Court the jury's verdict finding that Sharp was sane at the time of his trial on February 10 and 11, 1964, following which Sharp's petition in the Federal Court was denied.

trial, or its successors Art. 932b and Art. 46.02 V.A.C.C.P., hence *no jury trial* on the insanity issue was required or authorized. Ex parte Hodges, 166 Tex.Cr.R. 433, 314 S.W.2d 581, and cases cited; State v. Olsen, Tex., 360 S.W.2d 398. The issue was decided by the trial judge, as the Texas Statutes required, and the judgment so reflects. (Art. 501 C.C.P., 1925, now Art. 26.13 C.C.P., 1965).[5]

The petition for writ of habeas corpus is denied without prejudice to the filing of a petition in the 144th District Court of Bexar County complying with the provisions of Art. 11.07 V.A.C.C.P.

DOUGLAS, J., not participating.

---

5. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, does not require a jury trial on the issue of competency to stand trial.

Townsend v. State, Tex.Cr.App., 427 S.W.2d 55, holding that Texas Law would require a jury trial on such issue, has no application where the defendant pleads guilty.