Keith Dwight MANNING, Appellant,

v.

The STATE of Texas, Appellee.

No. 05-84-00816-20-CR.

Court of Appeals of Texas,
Dallas.

Nov. 5, 1985.

Elizabeth L. Phifer, Dallas, for the State.

Lawrence B. Mitchell, Dallas, for appellant.

Before AKIN, GUILLOT and HOWELL, JJ.

AKIN[1], Justice.

Keith Dwight Manning appeals his convictions for murder, attempted murder, and three counts of aggravated robbery, all arising from the hold-up of a convenience store. Manning received two life sentences for murder and attempted murder and three fifty-year sentences for the aggravated robbery convictions. Appellant asserts three grounds of error, none of which were preserved by proper objection at trial. All concern claimed errors in the trial court's charge, and all are asserted to be fundamental error. Because none of the alleged errors are fundamental, we affirm the judgment of the trial court.

In each instance, we must apply the tests for fundamental error set forth in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984). Appellant's first ground of error is common to all five cases. In each case, he asserts that the charge given to the jury at Manning's pretrial competency hearing was fundamentally defective because it both "misstated the burden of proof" and "fail[ed] to apply the law to the very facts of the case."

■ The charge now objected to states in pertinent part:

Under our law no person can be tried for a criminal offense while in a state of present incompetency. The burden of proof of competency in this case is upon the State to prove the defendant's competency by *preponderance of the evidence;* that is, by the greater weight of the credible testimony.

\* \* \* \* \* \*

Our law provides that a person is deemed incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or, a rational as well as a factual understanding of the proceedings against him [emphasis added].

Appellant's contention that the charge failed to apply the law to the facts of the case is without merit. The charge set forth the elements of incompetency to stand trial in language tracking the statutory definition. TEX.CODE CRIM.PROC. ANN. art. 46.02(1)(a) (Vernon 1979). This language clearly sets forth those facts which the jury must find. As so stated, the charge was not fundamentally erroneous since error, if any, did not deny appellant a fair and impartial trial.

■ Appellant further contends that the charge failed to properly place the burden of proof. In the ordinary case, the burden of proof is on the defendant to show incompetence by a preponderance of the evidence. TEX.CODE CRIM.PROC.ANN. art. 46.02(1)(b) (Vernon 1979). That section of the statute states:

(b). A defendant is presumed competent to stand trial and shall be found competent to stand trial *unless proved incompetent* by a preponderance of the evidence [emphasis added].

Appellant in his brief apparently complains that the trial court erroneously presumed incompetence and placed the burden of proof upon the State rather than upon the defendant as provided in the statute. Appellant cannot be harmed by erroneously receiving the benefit of a presumption. Needless to say, any such error cannot be fundamentally erroneous.

Nevertheless, the dissent raises a different argument on behalf of appellant from that presented in his brief. The dissent first notes that appellant's previous commitment to Rusk State Hospital, the year prior to this trial, was based on a finding of incompetency to stand trial. The dissent asserts that due to this presumed unvacated adjudication of incompetency, the burden of proof on the issue of competency shifts to the State. The dissent then further would hold that the burden of persuasion is now shifted to the State and that the burden was the "beyond a reasonable doubt" standard of insanity cases rather than the "by a preponderance of the evidence" standard given in the jury charge here. Because an incorrect standard was

---

1. This opinion was originally assigned to the dissenter.

given in the charge to the jury, the dissent asserts on appellant's behalf that fundamental error has been shown and that the jury finding of competency must be overturned. We cannot agree.

Initially we note that there is no clear evidence in the record before us of the nature of appellant's prior commitment to Rusk. The evidence at the competency hearing consisted exclusively of the statements of the State's witness, a medical doctor specializing in psychiatry. No record of any adjudication of incompetency is in the record. The testimony of the witness fails to establish clearly the reason for appellant's incarceration at Rusk. In this respect, the doctor testified that the appellant, in the year prior to the competency hearing in this case, was "sent to Rusk State Hospital for the criminally insane from Fort Worth. He stayed there about 18 days when he broke out of the building ... and he has not been back in the hospital since that period of time." Later, this witness testified that "[t]here is no indication at all that this man has ever been mentally ill." During cross-examination of this witness, the defense attorney stated that "there was a judgment out of a Fort Worth court that sent him to Rusk State Hospital that said he was incompetent; is that correct?" The witness replied that it was. The defense attorney, later in the cross-examination, asked the witness to explain "why there is that unvacated judgment of incompetency." The witness replied that the doctor in Fort Worth tended to "call everybody a schizophrenic," and that appellant was sent to Rusk with that diagnosis.

■ If the basis for incarceration in Rusk was "mental illness," as the witness's initial testimony quoted above and later statements regarding schizophrenia indicate, this would not be a determination of mental incompetency to stand trial. *See Leyva v. State*, 552 S.W.2d 158, 160 (Tex. Crim.App.1977); *Ainsworth v. State*, 493 S.W.2d 517, 522 (Tex.Crim.App.1973).

If the basis was a finding of incompetency to stand trial, as the dissent assumes and as the responses to the defense attorney's questions would indicate, there may be a question as to the effect of such a prior adjudication on the burden of proof. Prior Texas cases would lend support to the proposition that such a prior adjudication of incompetency creates the presumption of continuing incompetency. In such a situation, the State would then be required to prove the defendant competent at the time of trial. *Schaffer v. State*, 583 S.W.2d 627, 630 (Tex.Crim.App.1979). However, as stated by the Texas Court of Criminal Appeals, sitting *en banc*, in *Ex parte Yarborough*, 607 S.W.2d 565 (Tex.Crim.App. 1980) this change of presumption does not change the standard of proof. The State need only "establish the sanity of the accused by a preponderance of the evidence." *Yarborough*, 607 S.W.2d at 566.

Admittedly, *Yarborough* is somewhat different from our case. The court in *Yarborough* was construing a previous provision of the Mental Health Code which removed the continuing presumption of incompetency upon the patient's discharge from the mental hospital, so that the issue there did not concern the proper standard of proof once the burden shifts. Further, the statement quoted above refers to sanity of the defendant, not competency.

Nevertheless, *Yarborough* is pertinent here for two reasons. First, the cases relied upon by the dissent for use of "beyond a reasonable doubt" as the proper standard are also all insanity cases. *See Morrow v. State*, 154 Tex.Crim. 21, 224 S.W.2d 481, 484 (1949); *Murray v. State*, 147 Tex.Crim. 474, 182 S.W.2d 475, 477 (1944); *Herring v. State*, 141 Tex.Crim. 281, 148 S.W.2d 416, 417 (1941); *Gunter v. State*, 139 Tex.Crim. 145, 139 S.W.2d 116, 117 (1940). Other earlier cases on this point include *Glover v. State*, 125 Tex.Crim. 605, 69 S.W.2d 136 (1934) and *Witty v. State*, 69 Tex.Crim. 125, 153 S.W. 1146, 1147–48 (1913). The other case cited by the dissent in support of its contention, *Ex parte Tuttle*, 445 S.W.2d 194, 199 (Tex.Crim.App.1969) concerns only the shift in burden to the State and not the standard to be applied. The same is true of *Schaffer v. State*, 583 S.W.2d at 630.

Second, the standard of proof in insanity defense cases should, if any different from that in incompetency cases, be more stringent rather than less. If a preponderance of the evidence is a sufficient burden for the State when insanity is at issue, no more should be required when incompetency is at issue. We need not decide what the standard of proof should be when the issue raised is the insanity defense. It may be reasonable to hold that once insanity is presumed, the State must, as an element of the crime, prove beyond a reasonable doubt that the defendant was sane at the time the crime was committed. But competency to stand trial is not an element of a crime, and a hearing on this issue is civil in nature. *Parker v. State*, 667 S.W.2d 185 (Tex.App. —Texarkana 1983, pet. ref'd), *cert. denied*, —— U.S. ——, 105 S.Ct. 590, 83 L.Ed.2d 699, *Lingerfelt v. State*, 629 S.W.2d 216 (Tex.App.—Dallas 1982, pet. ref'd).

■ No valid reason exists to hold that the standard in competency to stand trial cases should be the same required of the State for criminal elements of a crime. Apart from placing an unreasonable burden on the State, such a holding as the dissent would have us make is not constitutionally nor logically required. *United States v. Makris*, 535 F.2d 899 (5th Cir. 1976), *rehearing denied*, 540 F.2d 1086, *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803. The *Makris* court relied on the "element of the crime" test as establishing the line between those issues which must be proved by the State beyond a reasonable doubt and those which need only be shown by a preponderance of the evidence.

Furthermore, article 5547–83, the statute previously relied on by some Texas courts holding that the burden of proof shifts to the State, has been amended. In some recent cases, the court of criminal appeals has apparently relied on the previous version both as to the continuing presumption of incompetency and as to termination of the presumption upon discharge. *See e.g.*, *Paul v. State*, 544 S.W.2d 668 (Tex.Crim. App.1976); *Ex parte Yarborough*, 607 S.W.2d 565. By relying on this statute to determine burden of proof shifts in cases

concerning mental incompetency to stand trial, the court of criminal appeals has recognized that the statute as then codified affected the common law rules applicable to that issue. From 1959 to September 1, 1983, when all recent cases relied on by the dissent as well as *Paul* and *Yarborough* were decided, article 5547–83 stated:

(a) The judicial determination under this Code that a person is mentally incompetent creates a presumption that the person continues to be mentally incompetent until he is discharged from the mental hospital or until his mental competency is redetermined by a court.

Act of May 30, 1959, ch. 409, § 1, 1959 Tex.Gen.Laws 887, *amended by* Act of April 27, 1983, ch. 47, § 1, 1983 Tex.Gen. Laws 211, 261–62. The statute now reads in pertinent part:

Mental competency is presumed in the absence of a contrary judicial determination under the provisions of the Texas Probate Code.

We need not determine whether this change in the statute reverses the prior rule in Texas that incompetency is presumed to continue once an adjudication of incompetency has been obtained since in this case, the trial court placed the burden to show competency on the State.

However, because the competency issue is distinguishable from a claim of insanity as a defense, the cases cited by the dissent are not persuasive on the question of standard of proof. We conclude, therefore, that the charge given was substantially correct, and, that if the court erred in placing the burden of proof on the State, appellant could not have been harmed. Consequently, it could not be fundamental error.

■ Appellant asserts in his second and third grounds of error that the charge to the jury in the criminal phase of the trial erred in failing to (1) apply the abstract law of alibi to the particular facts, and (2) define "without effective consent." Neither of these points were raised in the trial court, and thus cannot be a ground for reversal unless they are found to constitute "fundamental error." We hold that no fun-

damental error is shown under the *Almanza* standard.

■ The charge with respect to the defense of alibi read:

A defense submitted by the defendant in this case is what is known in law as an alibi, that is, that if the offense was committed, as alleged, the defendant was, at the time of the commission thereof, at another and different place from that at which such offense was committed and, therefore, was not and could not have been the person who committed the same.

Now, if you have a reasonable doubt as to the presence of the defendant at the place where the offense was committed, if an offense was committed, at the time of the commission thereof, then you will find the defendant not guilty.

We hold that the second paragraph of the charge adequately applies the law to the facts and error, if any, was not so egregious as to have deprived appellant of a fair and impartial trial.

■ Appellant's third ground of error relates only to the two aggravated robbery convictions. We note that the court included the following definition:

"Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by force, threat or fraud.

This is the general statutory definition of effective consent set forth in the Penal Code. TEX. PENAL CODE ANN. § 1.07(a)(12)(A) (Vernon 1974). The court's failure to define in the negative, if error at all, would not rise to the category of fundamental error.

Affirmed.

HOWELL, J., files a dissenting opinion.

HOWELL, Justice, dissenting.

I dissent because I believe that the State's burden of proof at the competency hearing was governed by the standard of beyond a reasonable doubt.

The record from appellant's competency hearing reflects that during the year previous to his trial, he was adjudicated incompetent and sent to Rusk State Hospital and that the prior adjudication of incompetency was unvacated at the time of trial in the instant case.

As the majority notes, the evidence at the competency hearing consisted exclusively of statements of the State's witness. The relevant portions of his testimony and cross-examination follow:

[The witness:] Last year [appellant] was sent to Rusk State Hospital for the criminally insane from Fort Worth. He stayed there about 18 days when he broke out of the building and managed to scale a fence.... But he did this and he has not been back in the hospital since that period of time.

. . . .

Q All right. *The reason essentially why we're having this hearing is because there was a judgment out of a Fort Worth Court that sent him to Rusk State Hospital that said he was incompetent;* is that correct?

A *That's correct.*

Q And the reason why we're here is to *determine again his competency?*

A *Yes, sir.*

. . . .

Q Okay. You said you had a theory about why they sent him to Rusk; is that correct.

A Yes, sir.

Q All right. And I may regret this, but, Doctor, what is the basis of that theory? That's one of the questions that we have here is *why there is that unvacated judgment of incompetency.* What's your theory as to that?

A I happen to know the psychiatrist who examined him in Fort Worth and he has a great tendency to call everybody a schizophrenic. And this, in fact he did. And Fort Worth has a little different system that they use than what we use in terms of sending some cases to Rusk. So that he was sent to Rusk with that diagnosis. Rusk did not find that diagnosis at all. (emphasis added)

The witness confirmed twice that the appellant was the subject of a incompetency

judgment. The witness further confirmed that the judgment was unvacated and the purpose of the instant competency hearing was to redetermine the appellant's competency.

The majority does not appear to find these statements sufficient to constitute clear evidence of a prior adjudication of incompetency. Rather, they seem to read the statements of the State's witness that the psychiatrist in Fort Worth tended to "call everybody a schizophrenic" and that appellant was "sent to Rusk with that diagnosis" as showing that the judgment of the Fort Worth court was without foundation. None of this is relevant. We cannot revise the final judgment of the Fort Worth court, erroneous or not.[1]

The role of the psychiatrist in a competency hearing is *not* to make the legal determination, but to present relevant psychiatric opinion evidence relating to the accused's mental condition to the trier of fact. The legal determination of competency is the province of the trier of fact. *See* Magnus, *Mental Incompetency*, 18 BAYLOR L.REV. 22, 40–41 (1966). A fair reading of the witness's statements does not create any conflict or confusion as to the nature of appellant's incarceration at Rusk on the basis of incompetency.

As quoted and discussed by the majority, the competency charge placed the burden of proof on the State. Clearly, under the circumstances shown, the trial court was required to do so. However, the writer cannot agree that preponderance of the evidence was the proper burden. From earliest times, the Court of Criminal Appeals has required the State in prior adjudication cases such as this to prove competency beyond a reasonable doubt. *See Morrow v. State*, 154 Tex.Cr.R. 21, 224 S.W.2d 481, 485 (1949); 2 M. Teague, *TEXAS CRIMINAL PRACTICE GUIDE* § 53.-04[3] (1985). In prior years, the cases

spoke in terms of "present insanity" rather than in terms of competency, but the inquiry was identical—the mental capacity of the accused at the time of trial. *Morrow* states:

> The careful trial court placed the *burden of proof upon the State to show beyond a reasonable doubt* not only that appellant was sane at the time of the alleged offense, *but also at the time of the trial,* on account of the fact that he had been found insane in the Tarrant County Court.... We think *such instruction was a correct proposition of law.* See *Gunter v. State,* 139 Tex.Cr.R. 145, 139 S.W.2d 116; *Herring v. State,* 141 Tex. Cr.R. 281, 148 S.W.2d 416.

*Morrow,* 224 S.W.2d at 485 (emphasis added). *See also Ex parte Tuttle,* 445 S.W.2d 194, 199 (Tex.Crim.App.1969) (notes that burden is on the State without stating standard of proof). The following cases involving insanity at the time of the offense hold that in instances of the defendant's prior adjudication, the State's burden is beyond a reasonable doubt: *Murray v. State,* 147 Tex.Crim. 474, 182 S.W.2d 475, 477 (1944); *Herring v. State,* 141 Tex.Crim. 281, 148 S.W.2d 416, 417 (1941); *Gunter v. State,* 139 Tex.Crim. 145, 139 S.W.2d 116, 117 (1940). The history of the "competency doctrine" is thoroughly discussed in *Townsend v. State,* 427 S.W.2d 55 (Tex.Crim. App.1968). The court noted that the rule against trying an incompetent person is long established and can be traced from the earliest common law times...." *Townsend,* 427 S.W.2d at 58.

The majority appears to read *Ex parte Yarborough,* 607 S.W.2d 565 (Tex.Crim. App.1980) (en banc) as reducing the State's burden to a preponderance. That defendant had been previously adjudicated insane both with respect to the time of the offense and the time of trial. He was later dis-

---

1. Additionally, the majority would read the witness's statements as preventing someone diagnosed as a schizophrenic from *also* being subject to an adjudication of incompetency to stand trial. Such was the precise factual situation involved at the first competency hearing in *Futch v. State,* 632 S.W.2d 743, 744 (Tex.Crim.

App.1982). At the hearing, at which the jury found Futch to be incompetent, a psychiatrist testified that Futch was a severely psychotic chronic schizophrenic. The conditions are not mutually exclusive; one is a medical diagnosis, the other a test defined by law.

charged from the mental hospital where he had been committed. There was no hearing as to the restoration of his sanity. Construing a provision of the Mental Health Code, the court declared that discharge alone terminates the presumption of incompetency. It went on to say:

> Prior to 1958, an unvacated judgment of insanity established a presumption of continuing insanity, thus shifting the burden of proof to the State to establish the sanity of the accused *by a preponderance of the evidence.* However, the enactment of Article 5547–81(b), V.A.C.S. abolished the presumption of continuing mental incompetency where the patient was discharged. (citations omitted)

*Yarborough,* 607 S.W.2d at 566 (emphasis added). Although relying on this language, the majority concedes it to be dicta. Dicta, it is submitted, should never be interpreted as overruling established authority.

Neither do the *Yarborough* citations support a preponderance of the evidence test. *Clark, Tuttle, Amos,* and *McGee* simply state that prior adjudication shifts the burden to the State.[2] As already noted, the older cases employ the term "insanity" regarding both criminal responsibility (insanity as a defense) and competency to stand trial (present insanity). *Townsend,* 427 S.W.2d at 61; *See* Comment, *Both Issues: Insanity and Incompetency,* 22 BAYLOR L.REV. 230 (1970). The *Morrow* charge dealt with mental capacity both at the time of the offense *and* at the time of trial and made no distinction in the required standard of proof. *Morrow,* 224 S.W.2d at 485.

Competency hearings are governed by article 46.02 of the Code of Criminal Procedure. Neither the burden nor the standard of proof in cases of prior adjudication is addressed therein. It is provided elsewhere that "[where the] Code fails to provide a rule of procedure in any particular state of case which may arise, the rules of common law shall be applied and govern."

TEX. CODE CRIM.PROC.ANN. art. 1.27 (Vernon 1977). As previously noted, the competency doctrine stems from the common law. Thus, the common law standard requiring proof beyond a reasonable doubt of competency at time of trial must apply. The majority urges that it is illogical to burden the State to prove mental capacity beyond a reasonable doubt whereas the defensive burden in the absence of prior adjudication is by a preponderance. Insofar as mental capacity at the time of the offense is concerned, the requirement of proof beyond a reasonable doubt probably enjoys constitutional protection. Mental capacity is presumed to exist until incapacity is proven. A prior adjudication destroys the presumption and creates the contrary presumption of incapacity. As a part of its constitutional burden to prove beyond a reasonable doubt the existence of a culpable mental state, the State must prove mental capacity at the time of the offense by the higher standard. Our majority takes the position that at a pre-trial hearing on the defendant's mental capacity to stand trial, the higher standard is not constitutionally mandated. Perhaps, so. However, the court of criminal appeals has made no distinction. Wherever the burden of proof concerning mental capacity has devolved upon the State, the court has imposed the test of beyond a reasonable doubt. We cannot disregard the rulings of that court simply by labeling them as "illogical."

The majority finds significance in the amendment of article 5547–83 of the Mental Health Code. Suffice to say, the shifting burden rule existed long before there was a mental health code. The fact that the newest version of the Code is silent as to whether the burden shifts cannot be taken as the affirmative repeal of a long standing common law rule. Furthermore, the amendment draws no distinction between mental capacity at the time of the offense and at the time of trial. To interpret the amendment as providing for no shift of the burden concerning capacity at

---

**2.** The majority specifically notes this with regard to *Ex parte Tuttle,* 445 S.W.2d at 194 (opinion p. 8).

the time of the offense would raise grave constitutional questions. To interpret the amendment as abolishing the shift in the one instance and not in the other would strain credulity.[3]

Nothing in the Code of Criminal Procedure or the Mental Health Code varies the requirement laid down in *Morrow* and similar cases. It follows that the charge in this case was in error as to the burden of persuasion.

Having determined that the charge contained the wrong standard of proof, such error must be evaluated in light of *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim. App.1984) which requires a determination of whether appellant's claim of fundamental error is "so egregious and created such harm that appellant has not had a fair and impartial trial." The degree of harm must be judged in light of the entire jury charge and the state of the evidence. *Almanza*, 686 S.W.2d at 171. This court should hold that appellant did sustain egregious harm of such nature as to deprive him of a fair and impartial trial where the court charged upon a preponderance of the evidence whereas it should have charged upon beyond a reasonable doubt. The higher burden of proof has been repeatedly extolled as a basic right of the accused, a cornerstone of criminal due process. *Leland v. Oregon*, 343 U.S. 790, 802-03, 72 S.Ct. 1002, 1009, 96 L.Ed. 1302 (1952) (Frankfurter, J., dissenting); *see In re Winship*, 397 U.S. 358, 362-63, 90 S.Ct. 1068, 1071-72, 25 L.Ed.2d 368 (1970). Whether or not the higher standard is guaranteed by the feder-

al or the State constitution in the specific instance does not diminish its importance as a safeguard against unjust imprisonment. The decisions of our court of criminal appeals have long provided the higher standard of proof to those who previously were adjudicated to be lacking in mental capacity, whether that incapacity be labeled as insanity or incompetency. In reliance upon the decisions of the court of criminal appeals, it should be held that appellant was denied a fair and impartial trial.

I dissent. The appeal should be abated and the case remanded for a new competency hearing.[4]

---

3. The amendment in question was part of an overall revision to the Mental Health Code and the legislative committee filed a lengthy report along with a recommendation for its adoption. The old code was described as "ambiguous, outdated, and in conflict with court decisions involving patient rights." It was described as *expanding* and *clarifying* the rights of the mentally ill. Nowhere does the committee intimate as an objective, the revision of the burden of proof as to mental incapacity in connection with criminal causes. HOUSE COMM. ON PUBLIC HEALTH, BILL ANALYSIS, TEX. S.B. 435, 68th Leg. (1983).

4. There is ample authority that the requirements of due process may be fully met if appel-

lant is now granted a hearing to determine, after the fact, whether he was competent at the time he was tried and convicted. *Garcia v. State*, 595 S.W.2d 538, 542 (Tex.Crim.App.1980); *Brandon v. State*, 599 S.W.2d 567, 573 (Tex. Crim.App.1979) (en banc); *Caballero v. State*, 587 S.W.2d 741, 743 (Tex.Crim.App.1979). Retrospective determinations are possible depending upon the facts of each case and the quality and quantity of evidence available. *See United States v. Makris*, 535 F.2d 899 (5th Cir.1976), cert. denied 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977).

Therefore, I would abate the appeal and remand the case with instructions that the trial court proceed in accordance with *Brandon*, 599 S.W.2d at 578.